No. 93.—ABNER P. POWERS, plaintiff in error, *vs.* THE CEN- TRAL BANK, defendant in error.

[1.] An Attorney who has collected money for the Central Bank, to whom. the State of Georgia is indebted for fees, has a right to retain, in his hands, money sufficient to satisfy his claim ; and on a motion made on the part of the Central Bank, to attach the Attorney for his failure to pay over the money so collected, he will be permitted to show that the State is indebted to him for professional services ; and if this be shown, the same should be· allowed as a credit or set-off against the demand upon which he is ruled.

Rule, in Bibb Superior Court. Decided by Judge HARDE- MAN, May Term, 1855.

The following statement of facts in this case, was agreed· upon and submitted by the parties :

The Central Bank ruled Powers for $534$\frac{77}{100}$, collected by him as Attorney for the bank, which he admitted in his hands.. To this rule, he pleaded and claimed a set-off of $300, with· interest from October, 1843, due him by the State for profes- sional services, which sum had been audited and liquidated. In the event the Court should hold that he was not entitled to interest, then he claimed that the set-off should be allowed to take effect at the time he collected and received the money for the bank, to wit : in 1852.

The Court decided that the debts not being mutual, the· set-off or deduction could not be allowed.

To which decision of the Court, Counsel for Powers ex-· cepted.

WHITTLE, for plaintiff in error.

KENAN, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] We are not prepared to hold that the judgment be- low can be sustained upon the ground, that the claim of the

plaintiff in error was against the State, while the rule against him was for money collected for the Central Bank. The as-sets of the Bank having been transferred to the Treasury of the State, and consolidated with the public funds of the Go-vernment, out of which this debt, if due, Judge POWERS should properly be paid, (*Cobb's Digest*, 115,) the objection, as to the want of mutuality between the parties, can hardly be main-tained.

We supposed, though not without doubt, (Judge STARNES reserving the right to dissent upon further examination of the authorities,) that the judgment was technically right up-on another ground, namely : that an individual could not in-directly recover from the State a substantive, independent claim by way of set-off, any more than he could directly re-cover a debt due from the State by bringing a suit against her. We found the doctrine so laid down in *Bouvier*, (2 *Vol-ume, Title Set-off*,) citing 9 *Peters*, 319. 4 *Dallas*, 303. 9 *Cranch*, 213, and *Paine's C. C. Reports*, 156, to sustain it. Be-ing unable to refer to any of these cases, and the principle, itself, seeming to be reasonable, especially under our law of set-off, which allows a balance to be recovered by the defendant, we affirmed the judgment of the Circuit Court.

Candor constrains me to say, that upon a full examination in my office of the books, I am satisfied the weight of authori-ty is the other way. *The Commonwealth against Matlack*, (*in 4th Dallas*,) fully sustains the position. It is inferentially maintained, perhaps, in the case of *The United States vs. Jacob Barker, in Paine's Reports.* The case of *The United States against Giles and others*, (9 *Cranch*,) stands thus : The third section of the Act of Congress, passed 1797, pro-vides, that where a suit shall be instituted against any per-son indebted to the United States, the Court shall grant judg-ment at the return term, on motion, unless the defendant shall, in open Court, make oath or affirmation, that he is equitably entitled to credits which had been, previous to the commence-ment of the suit, submitted to the consideration of the ac-counting officers of the Treasury, and rejected, specifying

each particular claim so rejected in the affidavit. The next section declares, that in suits between the United States and individuals, no claim for a credit shall be admitted upon trial but such as shall appear to have been submitted to the accounting officers of the Treasury for their examination, and by them disallowed, unless it shall appear that the defendant, at the time of trial, is in possession of vouchers not before in his power to procure, and that he was prevented from exhibiting a claim for such credit by absence from the United States, or by some unavoidable accident. (See *United States' Statutes at large*, 1 *volume*.)

Now, under this law, the Supreme Court held, in *Giles'* case, that no debtor of the United States could, at the trial, set off a claim for a debt due to him by the United States, unless such claim shall have been submitted to the accounting officers of the Treasury and by them rejected, except in the cases provided for in the Statute. Thus leaving, as it will be perceived, the general principle untouched.

The case of *The United States vs. Roberson*, (9 *Peters*) decided only that a claim for unliquidated damages could not be pleaded as a set-off by an individual against the Government, no more than it could in an action between individuals; and further, that the defendant could not plead as a set-off, a claim against the Government assigned to him by a third person. But the Court, in that case, say, that "when a defendant has in his own right an equitable claim against the Government for services rendered, or otherwise, and which has been presented to the proper accounting officer of the Government, who has refused to allow it, he may set up the claim as a credit in a suit brought against him for any balance of money claimed to be due by the Government."

So much for the precedents cited by *Bouvier*.

*The United States vs. Macdaniel*, (7 *Peters* 1) was an action of assumpsit brought by the Government to recover from the defendant the exact sum which, in Equity, it was admitted he was entitled to receive, for valuable services rendered to the public, in a subordinate capacity, under the express

sanction of the head of the Navy Department.   This sum of money happened to be in the hands of the defendant; and the question was, whether he should, under the circumstances, be required to surrender it to the Government, and then petition Congress upon the subject.   And the Court say, " a simple statement of the case would seem to render proper a very different course."

But whatever doubts may have previously existed upon the subject, they seem to have been removed by the opinion of the Supreme Court, in the case of *The United States against Wilkins, reported in* 6 *Wheaton*, 1.   In that case the Court, speaking of the discounts allowed by the Act of 1797, (the provisions of which I have already quoted,) in suits brought by the United States, says : " there being no limitation to the nature and origin of the claim for a credit which may be set up in the suit, we think it a reasonable construction of the Act, that it intended to allow the defendant the full benefit, at the trial, of any credit, whether arising out of the particular transaction for which he was sued or out of any distinct and independent transaction which would constitute a legal or equitable set-off, in whole or in part, of the debt sued for by the United States.   The object of the Act of 1797, seems to be to liquidate and adjust all accounts between the parties, and to require a judgment for such sum only as the defendant, in equity and justice, should be proved to owe to the United States.   The defendant, therefore, may well claim a credit for the sums due him, even if they had grown out of distinct and independent transactions, for he is legally, as well as equitably, entitled to them."

It may be alleged that this decision was controlled, in some manner, by the Act of Congress which it expounds. But by examining the Act, it will be perceived that it gives no right, whatever, to plead a set-off, or use any discount, but regulates and restrains a right as already existing.   The words of the law are not, that in such a suit, the defendant shall be allowed to plead a legal or equitable set-off, or to give the same in evidence ; but that the cause shall be tried,

unless the defendant shall make oath " that he is equitably entitled to credits," &c; and that " no claim for a credit shall be admitted on trial, but such as shall appear to have been presented to the accounting officers of the Treasury," &c.

These words, we repeat, apparently give no right, whatever, but recognize a pre-existing right ; and if it was a pre-existing right, it existed in other cases as well as in those contemplated by the Statute.    And hence, the importance and applicability of all the cases which are cited from the Supreme Court Reports, notwithstanding they seem to turn more or less upon the Act of 1797.

But not to overlade this opinion with authority, I propose to refer to one more case, which covers the exact point, and is similar, in all of its features, to the case at bar, to-wit: *The United States vs. Mann,* reported in 2 *Brockenbrough,* 1.

This was a motion, on the part of the United States, to commit William Mann, late Deputy Marshal of the district, on an attachment for not paying over a sum of money levied by him on an execution issued from the Circuit Court, on a judgment obtained by the United States ; and a motion, on the part of the said Mann, to discharge the said attachment, because the United States were indebted to him in a larger sum, for fees due to him as Deputy Marshal; which fees the Treasury Department had refused to pay.    And Chief Justice *Marshall* held, that an officer of the United States, who has levied a sum of money on an execution, in favor of the United States, to whom the United States are indebted for fees of office, in a sum greater than the amount of the execution, has a right to retain it by way of set-off; and on a motion made on the part of the United States to commit the officer for failure to pay over the money so levied, he will be permitted to show that the United States are indebted to him; and if this be shown, it is a sufficient cause why he should not be attached.

The Chief Justice says: "The United States have not re-

quired their officers to labor for the Government gratuitously. The law acknowledges the obligation of the U. States to pay for services rendered in common with all others, for whom the same services may be rendered. The United States, it is true, are not subject to those coercive measures which may be employed against an individual; but the duty is the same, and the theory of the law is, that this duty will be respected. * * * On what pretext can the claim of the officer on the Government be rejected ? The clearest principles of Law and Equity require that it should not be rejected; and if a Court be permitted to take jurisdiction of the subject, it cannot be disregarded, without disregarding, also, the soundest principles of law. The argument is the stronger, if the creditor, from any cause, cannot be coerced to pay the demand."

If we might presume so far, we would respectfully recommend the passage of a law, by our State Legislature, substantially the same as the Act of Congress of 1797, expressly allowing to defendants, when sued by the State, the privilege of pleading, by way of set-off or discount, any demand, legal or equitable, which they might have or hold in their own right, against the State, provided no judgment be rendered for any excess which might be found in favor of the defendant; or if found, that it do not operate as a lien on the public property, but only as record evidence of the indebtedness of the State for that balance.

---

NOTE.—Since writing out this opinion, application was made, by Counsel for the plaintiff in error, for the Court to review and reverse its own judgment; which was refused, upon the ground that the Constitution was imperative, that a *final* judgment should be rendered at the first term to which the cause was returnable, unless prevented by Providential cause.

The Attorney of the State then requested that the general doctrine enunciated in this opinion, might be modified by reference to the particular *facts* of this case.

After a careful examination of the facts set forth in the bill of exceptions, I am left in some doubt and uncertainty as to the truth of the matter. There

seems to have been some conflict of action between the officers of the Government, respecting this claim. Had it been passed upon by the Legislature,. or by the Governor, the law having clothed him with the power of employing Counsel and paying their fees, there would be an end of the business; and the judiciary, in such case, would not assume to exercise jurisdiction in the premises. But the question is, has this been done?

My conclusion is, that this is a case for legislative rather than judicial,. inquiry and determination.