## COMMERCE TRUST CO., v. STATE et al.

No. 6737—Opinion Filed May 2, 1916.
(157 Pac. 717.)

### Banks and Banking—Insolvency—Priority—Pledges.

The bank commissioner, by virtue of section 303, Rev. Laws 1910, has no lien superior to that of a pledgee upon that portion of the notes of an insolvent bank placed with such pledgee as collateral to an actual loan, necessary to liquidate the indebtedness for which said collateral was so pledged.

(Syllabus by Burford, C.)

Error from District Court, Caddo County: J. T. Johnson, Judge.

Separate actions by the State of Oklahoma against J. A. Dinkler, A. J. Morris, and Frank Carpenter, in which the Commerce Trust Company intervened. There was a consolidation of the actions and a judgment for the State, from which the Commerce Trust Company brings error. Reversed as to Commerce Trust Company, with directions.

A. J. Morris and C. H. Carswell, for plaintiff in error.

S. P. Freeling, Atty. Gen., and J. I. Howard, Asst. Atty. Gen., for defendants in error.

Opinion by BURFORD, C. The state of Oklahoma brought three actions in the district court of Caddo county against J. A. Dinkler, A. J. Morris, and Frank Carpenter, separately, upon promissory notes, of which the state of Oklahoma alleged it was the owner and holder. The defendants Dinkler and Morris paid the amount due on the notes into court, and alleged that the Commerce Trust Company claimed the notes, and prayed that said Commerce Trust Company might be interpleaded. Frank Carpenter answered, admitting the execution of the notes, and likewise set up that the Commerce Trust Company claimed said notes and made a like request for interpleader. The Commerce Trust Company filed its interplea in each of said actions, in which it is denied that the plaintiff was the owner and holder of said respective notes, and alleged the execution of the note by the maker, and further alleged that, prior to the maturity of said note, the Commerce Trust Company, for a valuable consideration and in due course, became the owner of the same, and was at the time of the filing of said interplea such owner and holder, and prayed for judgment on said notes. The three actions, involving

the same questions, wer' consolidated and went to trial, the state upon the one hand claiming the proceeds of the notes, and the Commerce Trust Company on the other hand asserting the same claim. Judgment was rendered for the state on a trial by a jury, and after motion for new trial was filed and overruled the interpleader, the Commerce Trust Company, brings the case here for review.

It was admitted by all parties that on the 3d day of June, 1913, the bank commissioner of the state of Oklahoma took charge of the Anadarko State Bank, and proceeded to administer its assets; that the depositors of said bank were paid from the depositors' guaranty fund, which was required to advance a large amount of money for said purpose, and that said funds had not been repaid from the assets of the bank.

The testimony on behalf of the trust company tended to show that some time prior to the failure of the bank, Boone Hite, the cashier thereof, and his two brothers had executed a certain note for $25,000 to the Commerce Trust Company for the benefit of the Anadarko State Bank; that said funds had been placed to the credit of the Anadarko State Bank and used by it; that as collateral security for the payment of said note there was deposited with the Commerce Trust Company out of the assets of the Anadarko State Bank certain notes made by individuals to it; that among said notes was a note of one Topley; that this Topley note had been taken by the Anadarko State Bank, and that to secure said note, which was in the principal sum of $2,200, there had been taken as collateral the notes of various Indians, aggregating some $8,000 or $10,000; that these collateral notes were not transmitted to the Commerce Trust Company with the Topley note, but that it alone was sent and its collateral retained by the Anadarko State Bank, held, however as a pledge for the payment of the Topley note in the hands of the Commerce Trust Company; that on or about the 29th day of May, the Anadarko State Bank anticipated that the Topley note would be paid, by reason of the fact that an Indian payment was then in progress, and requested its return by the Commerce Trust Company, sending in lieu thereof the notes of Morris, Dinkler, and Carpenter, which were involved in the instant case, and that said three notes were received by the Commerce Trust Company and the exchange made. It further appeared from the evidence that the Morris, Dinkler, and Carpenter notes were forwarded by one Yates, assistant cashier of the Anadarko State Bank, at the direction of Orms-

by Hite, who was neither officer, stockholder, nor director of the Anadarko State Bank, and who testified that in the absence of his brother, Boone Hite, the cashier, he directed the affairs of the bank. The testimony further tended to show that there was still due an indebtedness of about $5,000 on the original $25,000 note given by the Hite brothers. Upon this testimony the interpleader rested its case.

The testimony on behalf of the state tended to show that the letter of transmittal, by which the three notes in question were sent to the Commerce Trust Company for exchange, was not written on May 29th, as it purported, but at some later date, and it was alleged by the state in its reply, and insisted at the trial, that the Commerce Trust Company obtained possession of these notes by fraud, and that there was no indebtedness on the Hite note. It was further shown that about the time the notes were sent to the Commerce Trust Company, Boone Hite, the cashier of the Anadarko State Bank, was in Kansas City at the Commerce Trust Company endeavoring to arrange for further credit, and that such credit was refused, and that thereupon it became apparent that the bank must fail. It was further shown that the Topley notes were returned by the Commerce Trust Company and received by the bank commissioner, and by him returned to the Commerce Trust Company, and the delivery of the Dinkler, Morris, and Carpenter notes demanded. It was not definitely shown whether or not the Topley note had been collected, and, if so, by whom, although the assistant bank commissioner testified that he thought it had not been collected. It was shown, however, that the collateral which had been originally given as security for the Topley note was taken by the bank commissioner, and by him, at least, partially collected, and that a portion of it had been delivered to a Mr. Hammert, who was a joint maker with Topley upon one note of $1,000 in the Anadarko State Bank, for which the officers of the bank insisted there was no collateral. The trust company took the position at the trial, in contradiction of its interplea, that the three notes in question were held as collateral to the note of Hite brothers, but on the other hand Boone Hite, who testified as a witness for the trust company, insisted in his testimony that the notes put up with the trust company were in all instances sold by the bank, and should have been indorsed without recourse, and that the fact that these three notes were not so indorsed was a mistake. Upon these issues the trial court instructed the jury as follows:

"You are further instructed that if you find and believe from the evidence by a preponderance thereof that in each of said causes the Anadarko State Bank, before its failure, as the owner of the notes sued on in said cause in due course of business sold each of said notes to the intervener, the Commerce Trust Company would be entitled to recover herein against the plaintiff, and it would be your duty to ·so find your verdict; but, on the other hand, if you find and believe from the evidence, by a preponderance thereof, that the Anadarko State Bank as the owner of said notes sued upon and in due course of business before its failure sent the said notes to the intervener, the Commerce Trust Company of Kansas City, and deposited the same as collateral security for any indebtedness owed by the Anadarko State Bank or the Hite brothers to the said trust company, and you so find from the evidence, then you are instructed that the plaintiff the state of Oklahoma would be entitled to recover against the intervener, the Commerce Trust Company, and you should so find."

To this instruction the Commerce Trust Company excepted, and alleges in this court that the giving thereof was error. It will be seen from the instruction that if the jury followed it, they could do nothing but return a verdict for the state, as at the trial the trust company ˙ took the position that the three notes in question were held as collateral. It is insisted by the state that there is no error in the instruction, and that the same is in consonance with section 303, Rev. Laws 1910, which provides as follows:

"In the event that the bank commissioner shall take possession of any bank or trust company which is subject to the provisions of this chapter, the depositors of said bank or trust company shall be paid in full, and when the cash available or that can be made immediately available of said bank or trust company is not sufficient to discharge its obligations to depositors, the said banking board shall draw from the depositors' guaranty fund and from additional assessments, if required, as provided in section 300, the amount necessary to make up the deficiency; and the state shall have, for the benefit of the depositors' guaranty fund, a first lien upon the assets of said bank or trust company, and all liabilities against the stockholders, officers and directors of said bank or trust company, and against all other persons, corporations or firms. Such liabilities may be enforced by the state for the benefit of the depositors' guaranty fund."

The state insists that collateral notes in the hands of a pledgee thereof are "assets" of the defunct bank, upon which the bank commissioner has the first lien. It is to be here noted that there was no question, either at the trial or in this court, in regard to the giving of collateral by the bank to secure the note of Hite brothers, the transaction by both parties being regarded as a transaction by the bank. Under these circumstances we cannot agree with the contention of the state. The question is a novel one, but an analysis of the act seems to us to make it clear that it was not the intention of the Legislature that the result contended for by the state should be effected. It cannot be successfully contended that the lien given by section 303, Rev. Laws 1910, attaches prior to the time the bank commissioner takes charge of the insolvent bank. The section is predicated upon the opening sentence, "In the event the bank commissioner shall take possession of any bank or trust company," and it will be readily seen that if the lien attaches prior to that time, no bank could pay out its money, sell its notes, or transfer any real estate that it might have acquired, except subject to some future, prospective, and contingent lien of the bank commissioner, and that thereby the entire business of the bank would be for all practical purposes suspended. Dating his lien, therefore, from the time the bank commissioner takes charge of the bank, it seems clear that the only "asset" of the failed bank in notes delivered to a pledgee as collateral for an actual loan is the amount remaining after the pledgee has been paid the amount of such loan in full. There has been, prior to the attaching of the lien of the bank commissioner, a transfer by the insolvent bank, not absolute, it is true, but nevertheless effectual, ˙conveying to the pledgee so much of the funds represented by the pledged notes as is necessary to pay the amount due to the pledgee thereof. It would seem that any other construction must work, not only a hardship, but an absurdity. If the bank commissioner has the first lien upon these notes pledged as collateral, then a bank might go out and borrow money, pledging its notes as collateral therefor, the transaction taking place immediately prior to its insolvency, and upon the bank commissioner taking charge, he will have; not only the funds derived from the loan, but the collateral representing the loan, and the insolvent bank will have a double benefit and the obliging creditor a complete loss. It is not believed that the Legislature contemplated any such unjust result.

In Briscoe v. Hamer, 50 Okla. 281, 150 Pac. 1101, this court held that a person to whom an insolvent bank was indebted might set off such indebtedness against a note due to such bank and in the hands of the bank commissioner for collection. In considering the rights of the bank commissioner under section 303, Rev. Laws 1910, it was said:

"In this situation of the law it seems to us that the position of the bank commissioner in

taking charge and collecting the assets of a failed bank is quite analogous to that of a receiver or trustee in bankruptcy, or of an assignee for the benefit of creditors."

Again, in Ward v. Oklahoma State Bank of Atoka, 51 Okla. 193, 151 Pac. 852, this court was considering the right of the maker to set up defenses against a promissory note in the hands of a party who bought the same from the bank commissioner, who had taken the note in question from the assets of a failed bank. The court there said:

"Where the bank commissioner assumes possession of a state bank, he does not take the assets thereof for value without notice, but subject to all claims and defenses that might have been interposed against the bank had it continued under its corporate management."

In Scott v. Armstrong, 146 U. S. 499, 13 Sup. Ct. 148, 36 L. Ed. 1059, the Supreme Court of the United States was considering the rights to a set-off against the assets of a failed national bank in the hands of its receiver, and it was there "insisted that the assets of the bank existing at the time of the act of insolvency included all of its property without regard to any existing lien thereon or set-offs thereon." The court there said:

"We do not regard this position as tenable. Undoubtedly any disposition by a national bank, being insolvent or in contemplation of insolvency, of its choses in action, securities, or other assets, made to prevent their application to the payment of its circulating notes, or to prefer one creditor to another, is forbidden; but liens, equities, or rights arising by express agreement, or implied from the nature of the dealings between the parties, or by operation of law, prior to insolvency and not in contemplation thereof, are not invalidated."

It is to be noted that section 5230 of the Revised Laws of the United States (U. S. Comp. St. 1913, sec. 9817), though not entirely considered in this decision, confers upon the Comptroller of the Currency a first lien upon all the assets of an insolvent national bank to secure the government against loss by reason of the redemption of the bank's circulation. In Fourth Street National Bank v. Yardley, Receiver, 165 U. S. 634, 17 Sup. Ct. 439, 41 L. Ed. 855, the Supreme Court of the United States went so far as to enforce against a receiver of a national bank an equitable assignment of a fund given for a loan to a failing bank.

By reason of the considerations above set out we are of the opinion that the instruction given by the trial court was erroneous.

It is insisted by the state, however, that the cause ought not to be reversed, for the reason that the testimony shows that the act of the assistant cashier of the bank was not the act of the bank, and was not directed by any officer thereof, and that the testimony further shows that the Commerce Trust Company had knowledge of the insolvency of the bank at the time of the exchange of securities, and that therefore it could not, in any event, recover. There was, however, no testimony as to the authority of the assistant cashier. The testimony did not show that there was any loss to the Anadarko State Bank by reason of the substitution of the notes in question for the Topley note. The value of the Topley note was not shown. On the other hand, the evidence did distinctly show that the collateral to the Topley note had been appropriated by the bank commissioner, and partially collected or disposed of, and that therefore the Anadarko State Bank represented by the commissioner had received some benefit from the transaction, whereas the Commerce Trust Company, if forced to return the notes in suit and take back the Topley note, was placed in a worse position than if the exchange had not been made. It is not our understanding that a transfer with knowledge of insolvency is necessarily fraudulent, unless it be for a pre-existing debt or for the purposes or with the effect of defrauding the creditors of the insolvent institution. If the Commerce Trust Company had loaned this bank, knowing of its insolvency, money with which to tide over its affairs, and had taken therefor security from the assets of the bank, we think it could hardly be said that the transaction was fraudulent, and this would be equally true if the mere substitution of securities of equal value was made with the intention of enabling the bank, as testified by some of the witnesses, to collect the Topley note and apply its proceeds to the liquidation of its indebtedness. Whether or not this was what was actually done, or whether or not the conduct of the Commerce Trust Company or the officers of the failed bank was fraudulent and for the purpose of defrauding the depositors or the state, or whether or not the officer acted within his authority, or, if not, whether or not the Anadarko bank or the commissioner, as its receiver, had knowingly appropriated the result of the acts of the assistant cashier, were all questions for the jury, as to which there was material conflict of testimony, and which therefore ought not to be decided here. We are of the opinion, therefore, that it cannot be said that the Commerce Trust Company cannot recover upon any theory under the evidence adduced, and that the action of the trial court in giv-

ing the instruction complained of was prejudicial.

The cause is therefore reversed as to the Commerce Trust Company, with directions to the trial court to grant a new trial, and for further proceedings not inconsistent with this opinion.

By the Court: It is so ordered.