## MOTHERSEAD, Bank Com'r, v. LEWIS.

No. 15785—Opinion Filed Sept. 22, 1925.

Rehearing Denied April 13, 1926.

### 1. Findings Sustained by Evidence.

The findings of the trial court are sustained by the evidence.

### 2. Banks and Banking—Deposit as Escrow —Status as Trust Fund.

Where money is paid into a state bank, not as a deposit, but to be applied by the bank, according to the terms of an escrow agreement held by the bank, to the satisfaction of a mortgage assumed by the payor by the escrow agreement, the ownership of the money is retained by the payor until it is so applied, and impressed with a trust in the hands of the bank by reason of such ownership.

### 3. Same — Insolvency of Bank — Preservation of Trust Fund Presumed.

Where, in such case, while charged with the trust fund, and with cash on hand in excess of the trust fund, the bank is declared insolvent and the bank and its assets pass into the hands of liquidating agents, it will be presumed, in the absence of evidence to the contrary, that the bank had conducted its ordinary business with its own money and retained the trust fund.

(Syllabus by Ray, C.)

Commissioners' Opinion. Division No. 1.

Error from District Court, Woodward County; James B. Cullison, Judge.

Action by W. H. Lewis against O. B. Mothersead, acting State Bank Commissioner, et al. Judgment for plaintiff, and defendants Bank Commissioner and liquidating agents appeal. Affirmed.

M. W. McKenzie and O. C. Wybrant, for plaintiffs in error.

Chas. R. Alexander, for defendant in error.

Opinion by RAY, C. This appeal is from a judgment for W. H. Lewis against the State Bank Commissioner and the liquidating agents in charge of the New State Bank of Woodward for $1,264 adjudged to be a trust fund in the hands of the liquidating agents and the Bank Commissioner, and directing them to pay that sum to the plaintiff, Lewis.

The suit was brought originally against the New State Bank, Paul M. Lobaugh, its president, and L. B. Campbell, and Mary H. Campbell, husband and wife, for the cancellation of a written contract of sale of real estate from Campbell to Lewis, alleged to have been induced and brought about by the false and fraudulent representation made by Campbell, Lobaugh, and other officials of the bank, and for the recovery of $500 paid to Campbell, or placed in escrow in the bank, and $1,264 paid to the bank, in pursuance of the contract, to be paid by the bank to the holders of a certain mortgage on the land. After service of summons was had upon the defendant, the bank was closed by the Bank Commissioner as insolvent and liquidation agents appointed. On motion of the plaintiff the Bank Commissioner and the liquidating agents were substituted for the New State Bank, as defendants. The substituted defendants moved to dismiss the action as to them upon the ground that the state was the real party in interest and held a prior lien upon all the assets of the failed bank for the benefit of its depositors and creditors; that the state had not given its consent to be sued, and, therefore, the court was without jurisdiction of the substituted defendants or of the subject-matter. On February 13, 1924, that motion was overruled and the case continued as to the Bank Commissioner and liquidating agents with leave to answer, and the case was tried to the court upon the issues joined between the plaintiff and the other defendants, resulting in judgment in favor of Lobaugh and Mary H. Campbell, and against plaintiff, and in favor of the plaintiff, Lewis, against L. B. Campbell, for the cancellation of the contract and for $500 paid Campbell at the time the contract was entered into. At the same time the plaintiff, by leave of court, amended his petition to conform to the proof, by alleging, in substance, that subsequent to commencement of the action, the New State Bank had been declared insolvent and its assets taken over by the Bank Com-

missioner for liquidation; that the payments made to the bank, as alleged in the petition, under the void contract, were so paid in trust for the specific purpose, only, of paying off a mortgage on the land agreed to be conveyed; that the money was received by the bank as a trust fund for that purpose; that the trust fund, amounting to $1,264, came into and was still in the hands of the Bank Commissioner and the liquidating agents. June 10, 1924, the Bank Commissioner answered the amended petition by general denial. The case was tried July 24 1924, on the issues joined between the plaintiff, Lewis, and the State Bank Commissioner and the liquidating agents. A demurrer to plaintiff's evidence was overruled. The defendants elected to stand upon the demurrer and judgment was for plaintiff as above stated.

The question raised by the motion to dismiss is not presented in the brief. Reversal is asked, as we understand it, upon the ground that the evidence was insufficient to sustain the judgment in the nature of a preferred claim, or to support the general finding, in favor of the plaintiff. More specifically, the contention is:

(1) There was no evidence that the money paid to the bank by the plaintiff was not paid to the mortgagee in accordance with the contract.

(2) There was no evidence showing that the $1,264, paid to the bank, ever came into the hands of the liquidating agents and Bank Commissioner.

It is also argued, in a supplemental brief, that there was no evidence to sustain the allegation of fraud as against the New State Bank or any of the bank's officials.

It is true no such evidence was offered at the trial of the issue joined between the plaintiff and the substituted defendants and, at the previous trial, the finding of the court was against the plaintiff as to the allegation of fraud on the part of the bank and its officers. But that formed no material part of the issues as between the plaintiff and the substituted defendants. The issues were, first, Did the money paid into the bank by the plaintiff come into the hands of the substituted defendants, and, if so, was it impressed with a trust?

It is made to appear by the contract between Lewis and Campbell that Lewis was to pay $500 cash and execute a note in the sum of $3,600 and assume payment of a mortgage of $4,400, in payment for the land. The contract contained these provisions:

"Second party further agrees to pay in at the New State Bank the sum of one hundred dollars ($100) each month. Said one hundred dollars to be applied on the mortgage of forty-four hundred dollars which matures at the rate of one thousand dollars per year for four years and four hundred dollars the fifth year. Same bearing 6% interest from April 1, 1922. * * * Both parties agree that the payment of five hundred dollars shall be held with this contract until second party shall examine and approve abstract of title on said real estate. Both parties agree that this contract shall be placed in escrow in the New State Bank, Woodward, Oklahoma."

The contract was deposited in the bank in escrow, and came into the hands of the Bank Commissioner when the bank was closed, and into the hands of the liquidating agents when they took charge of its assets. The plaintiff testified that he paid into the bank the following amounts which the president of the bank agreed to forward to the mortgagee:

| | |
|---|---:|
| June 17, 1922 | $150.00 |
| July 17, 1922 | 150.00 |
| August 18, 1922 | 75.00 |
| January 25, 1923 | 75.00 |
| January 25, 1923 | 150.00 |
| January 25, 1923 | 75.00 |
| April 9, 1923 | 190.00 |
| May 6, 1923 | 399.00 |

These items total $1,264.

The contract was produced by the liquidating agents as having been found in the bank when they took charge. The following indorsements were on the back of the contract, which the liquidating agent producing it thought were in the handwriting of the president of the bank:

| | | |
|---|---|---:|
| Pd. | $150.00 | June 17, 22. |
| Pd. | 150 00 | July 17, 22. |
| Pd. | 75.00 | Aug. 18, 22. |
| Pd. | 75.00 Bal. Aug. Payment, | 1-25-23. |
| Pd. | 150.00 Sept. Payment, | 1-25-23. |
| Pd. | 75.00 on Oct payment | 1-25 23. |
| Pd. | 190.00 payment, | 4-9-23. |

$865.00
Pd. $299.00 on May 6, 1923.

These items indorsed on the contract by the president of the bank correspond, as to dates and amounts paid, to the items as testified to by the plaintiff, and total $1,264.

The bank's individual ledger showed the following account:

| Sheet No. | Name Address | Escrow Account |
|---|---|---|
| Old Balance. | Date.  Checks in detail.<br>Balance brought forward. | Date.  Deposits.<br>Date.  New balance.<br>June 23.  $1,264.00  1,264.00 |

It will be observed this ledger sheet does not show the name of the person to whose credit, or account, the escrow fund belonged. It does show, however, that the sum of $1,-264 was being held in escrow by the bank. It therefore became a question of fact to be determined by the facts and circumstances proven in the case as to whether the escrow account showing an escrow fund in the bank was the account of the plaintiff. It is urged that the evidence does not show it to be the account of the plaintiff. The liquidating agent testified that he had not checked it up personally, and did not personally know that it was the plaintiff's account; but he also testified that he could check it up and that he had brought into court this particular sheet of the individual ledger in response to a request from plaintiff's attorney to bring in the ledger sheet showing the plaintiff's escrow account. By reason of objection made by the defendants a full and complete statement was not made by the witness. In response to a question by counsel for defendants the witness stated that there were other accounts showing that money was held in escrow, but he did not say that the books showed any other escrow account which did not show the name of the depositor or to whom it belonged. · The liquidating agent further testified that the books of the bank did not show the several deposits, or payments, made by the plaintiff and that the only way they were made to appear was by the indorsements on the back of the contract.

We think it a reasonable deduction from these facts and circumstances that the escrow account of $1,264 was the account of the plaintiff, Lewis, and especially as the defendants, who had control of all the bank's records, made no attempt to show, by cross-examination of the liquidating agent, or otherwise, that the account belonged to some other person. It was stipulated there was cash on hand in the bank in the sum of approximately $4,000 when the bank closed and it came into the hands of and was being held by the liquidating agents.

As contended for the Bank Commissioner and liquidating agents, the money paid into the bank by the plaintiff was not paid at the time and in amounts required by the contract. It provides that Lewis should pay into the New State Bank $100 a month to be applied on the $4,400 mortgage, which matured at the rate of $1,000 a year for four years, and $400 the fifth year, bearing 6% interest. Payment was not made in regular monthly payments as required by the contract, but within the year payments were made exactly sufficient to pay the $1,000 note and interest on the outstanding notes. There being sufficient evidence to sustain the finding that the escrow account of $1,264, shown by the bank's individual ledger, was the account of the plaintiff occasioned by the several payments made by him to the bank's president, it follows that there was sufficient evidence to sustain the finding that the bank had not forwarded the money to the mortgagee in accordance with the escrow agreement. The plaintiff also testified that he first learned the bank had not sent the money to the mortgagee in August, 1923.

We think the evidence sufficient to sustain the findings, necessarily included in the general finding: (1) That the contract was deposited with, and received by the bank as an escrow agreement; (2) that the sum of $1,264 was paid by Lewis to the bank for the specific purpose of being applied by the bank upon the note and mortgage, as provided in the escrow agreement, which the bank held, and that the bank accepted the money for that specific purpose and agreed to so apply the money; (3) that the bank did not forward to the mortgagee the money paid to it by Lewis as it undertook to do as holder of the escrow agreement; (4) that when the bank was closed as a failed bank it still held and retained the $1,264 paid to it by Lewis under the terms of the escrow agreement; (5) that when the failed bank and its assets came into the hands of the Bank Commissioner and liquidating agents the records of the bank showed an escrow account of the plaintiff in the sum of $1,264; (6) that there was cash on hand in the bank at the time it was closed as a failed bank of approximately $4,000—which came into the hands of, and is held by, the liquidating agents.

These facts being established by the evidence, it will be presumed, in the absence of proof to the contrary, that the bank 'in the transaction of its ordinary business, after the trust fund was received, used its own money and did not use the trust fund. This conclusion is sustained by the case of Willoughby et al. v. Weinberger, 15 Okla. 226, 79 Pac. 777, cited and relied on by the Bank Commissioner, and that case is approved in Cherry v. Territory, 17 Okla. 213, 89 Pac. 190, also cited.

The Bank Commissioner and liquidating agents took over the failed bank and its assets as they found them at the time the insolvency was declared. Briscoe v. Hamer, 50 Okla. 281, 150 Pac. 1101; State ex rel. Strain v. Wells, 98 Okla. 169, 223 Pac. 694;

Lawson v. Warren, 34 Okla. 94, 124 Pac. 46. When the bank received plaintiff's money to be applied by it to the payment of the mortgage, as provided in the escrow agreement, which it held under the terms of the agreement, it received it as a trust fund for that purpose and no other. In such circumstances the money remained the property of the plaintiff until applied to such payment. The bank having failed to apply the money to payment of the mortgage, ownership was retained in the plaintiff impressed with a trust. If that fund went into the hands| of the Bank Commissioner and liquidating agents by reason of the bank's insolvency, it was received by them impressed with the trust by reason of plaintiff's ownership. The evidence shows that the books of the bank disclosed the trust nature of the fund. At the time the bank was declared insolvent there was cash on hand in excess of the trust fund.

The evidence was sufficient as against a demurrer and to sustain the judgment in the absence of controverting evidence.

The judgment is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. p. 876, § 2853. (2) 7 C. J. p. 632. § 307. (3) 7 C. J. p. 752, § 548 (Anno).