**MOTHERSEAD, Bank Com'r, v. HARRINGTON et al.**

No. 16293—Opinion Filed March 23, 1926.

Rehearing Denied Jan. 25, 1927.

**1. Banks and Banking—Insolvency—Commissioner Takes Trust Assets as Such.**

Where a Bank Commissioner, pursuant to law, takes charge of an insolvent bank for liquidation, he takes its assets subject to any trust impressed upon them.

**2. Same—Escrow or Special Deposit as Trust Fund—Recovery from Augmented Assets in Hands of Bank Commissioner.**

Where an escrow or special deposit is placed in a bank, the condition being that the same is to be held by the bank for the purpose of furthering a transaction between the depositor and a third person, such deposit constitutes a trust fund, which, on the failure of the third party to perform the the condition of the escrow, the depositor is entitled to follow and reclaim from the augmented assets in the hands of the State Bank Commissioner, in preference to the claims of general creditors, where such officer, on account of such insolvency, has taken charge of such bank for liquidation.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Pawnee County; W. B. Williams, Judge.

Action by D. J. Herrington et al. against O. B. Mothersead, Bank Commissioner, in charge of the assets of a failed bank, to recover balance of an escrow deposit. Judgment for plaintiffs, and the Commissioner appeals. Affirmed.

M. W. McKenzie and Gentry Lee, for plaintiff in error.

L. V. Orton, for defendants in error.

Opinion by ESTES, C. Parties will be referred to as they appeared in the trial court, inverse to their order here. On July 27, 1922, one Calvert and his wife entered into a written contract for the sale of an oil and gas lease to plaintiffs Herrington and three others, on certain 80 acres of land belonging to the Calverts for the bonus sum of $2,200, lease being attached to the contract. The contract, the purchase price, and lease were placed in Oklahoma State Bank of Jennings "to be held in escrow under the terms hereinafter set forth," among other things, to wit: That Calvert was a minor, but would come of age on December 15, 1922; that he would immediately after the date of said contract seek to have his majority rights conferred upon him as by law provided; that if this should not be done, he would, immediately upon coming of age on said date, execute such valid lease on the premises. The president of said bank prepared said contract between said parties and received same, together with said funds for and on behalf of the bank, the account being opened and carried under the caption "Escrow, Henry Calvert v. D. J. Herrington et al." In September of 1922, said Calvert, having become sui juris by court decree, did execute a valid lease on one-half of the land, and by agreement of all the parties, he and one Smith, who was interested in said lease, were paid one-half of said deposit by said bank, the balance of $1,100 remaining in said bank under said agreement, pending title. The bank, without the consent of plaintiffs, paid to Calvert on his checks certain amounts until said balance was reduced to $709.65. In December of 1922, the case of Randles v. Calvert was decided, by which it was finally adjudged that Calvert could not make a valid lease on the remaining 40 acres. Subsequent to such determination, and about January 1, 1923, said bank became insolvent, and, pursuant to law, was taken over by defendant the Bank Commissioner, with all its assets, and was in process of liquidation through his agent at the time this action was filed. More than $3,000 in cash and other assets belonged to the bank at the time it failed, all of which came into the hands of the Commissioner. Plaintiffs were not regular patrons of this bank, but drew and paid their respective checks on other banks, aggregating $2,200, which were received by Oklahoma State Bank of Jennings, and by it deposited to its credit in its correspondent bank, thus augmenting its assets. The trial court found that said balance of $709.65 was a trust fund and a preferred claim against the assets of said bank in the hands of the Commissioner, rendering judgment accordingly,

and ordering payment of the same out of the funds in his hands. Defendant appeals.

1. The defendant Commissioner can make no claims as an innocent purchaser. He took the failed bank and its assets as he found them at the time the insolvency was declared. State ex rel. Strain, etc., v. Wells, 98 Okla. 169, 223 Pac. 694. Had the bank not failed, clearly its duty was to pay the balance of said fund in its hands to plaintiffs. Defendant Commissioner took it by no better title than did the bank as trustee. He took the assets of the insolvent bank subject to any trust impressed upon them.

2. Clearly, this fund was not on general deposit. Clearly, also, said bank accepted said fund on the terms and conditions of the escrow agreement. There can be no doubt that it so intended and did so receive same, both by the terms of the contract, of which it had full knowledge, and by the manner in which it kept and denominated the account. The relation of debtor and creditor, as by general deposit, did not arise. It was a special deposit and became a trust fund. Because of its trust character, it can be followed and repayment required out of the assets of the bank in preference and before distribution to the general creditors. It was to be paid to Calvert, if he performed the conditions of his contract; it was to be repaid to plaintiffs, if he defaulted. If the balance of said trust fund was not commingled by the bank with its general funds before the failure of the bank, it has certainly been commingled with the general assets of the bank in the hands of the Commissioner. The fact that it has been so commingled does not take away its trust character, nor prevent the owners from reclaiming it, if they can trace it into the existing assets in the hands of the Commissioner. Since this fund never belonged to the bank, the creditors cannot be injured by returning it to the owners, the plaintiffs. In Hivick v. Hemme, No. 16158, decided March 16, 1926, 118 Okla. 167, 247 Pac. 962. this court held that one who receives a fund as trustee of an express trust, and has not spent it for trust purposes, is treated as if the fund were still in his hands, and he cannot say it is not. If such trustee breaches his trust by expending the fund otherwise than in execution of the trust, his personal liability to the trustors is a simple contract equitable debt. Such holding is based on Davis v. Hoffman (Mo.) 67 S. W. 236, and Pom. Eq. Jur. (3rd Ed.) secs. 1079 and 1080. The duty of the bank was to repay said balance of $709.65 to plaintiffs immediately upon the determination that said Calvert could not deliver a valid lease on the re-

maining 40 acres of land. Perhaps it cannot be said that said bank expended the fund otherwise than in the execution of the trust, unless its becoming insolvent and, by force of law, turning the same over to the Commissioner constitutes an expenditure otherwise than in the execution of the trust. In any event, the Commissioner succeeded to the duties of the bank in this behalf, since he had received from the failed bank more than $3,000 in cash and other assets. In Secrest v. Ladd (Kan.) 209 Pac. 824, it is said:

"Where a special deposit is placed in a bank to be used only in payment of certain shares of capital stock of the bank when the same should be duly authorized and issued, which stock was not authorized nor issued, but the bank misappropriated the money so deposited and used the same in its general business, thereby augmenting its assets, and where shortly afterwards the bank became insolvent and its assets passed into the hands of a receiver, the special deposit constitutes a trust fund which the beneficial owner was entitled to follow and reclaim from the augmented assets in the hands of the receiver in preference to the claims of general creditors."

In Nelson v. Paxton (Kan.) 214 Pac. 784, it is held:

"In a suit by the owner of government bonds left with a bank for safe-keeping, and which were misappropriated by the bank or some of its officials, against the receiver of the bank, the plaintiff is not entitled to judgment decreeing the amount due him to be a trust fund and a lien upon the assets unless it is shown that the proceeds of the bonds were in some form a part of the assets which came into the hands of the receiver."

The same rule is followed in Brogan v. Kreipe (Kan.) 227 Pac. 261; 7 C. J. 761; Hudspeth et al. v. Union Trust & Savings Bank, 196 Iowa, 706, 196 N. W. 378, 31 A. L. R. 466. See voluminous annotations at the close of said A. L. R. report, at page 472 of which this general rule is laid down:

"It may be stated as a general rule that where a deposit is made in a bank with the distinct understanding that it is to be held by the bank for the purpose of furthering a transaction between the depositor and a third person, or where it is made under such circumstances as give rise to a necessary implication that it is made for such a purpose, the deposit becomes impressed with a trust which entitles the depositor to a preference over the general creditors of the bank where it becomes insolvent while holding the deposit."

Defendant contends that the trial court erred in refusing to permit testimony of oth-

er escrow accounts. It is sufficient in this behalf to say that the claimants to any other escrow deposits were not before the court in the instant case. No question of priority or other equities, as to them, is involved here. The assignments of error not disposed of by the foregoing are unnecessary to be discussed. Let the judgment be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 7 C. J. p. 482 §12 (Anno). (2) 7 C. J. p. 482 §12 (Anno); p. 751 §548; anno. 31 A. L. R. 472; 39 A. L. R. 930; 3 R. C. L. p. 558; 1 R. C. L. Supp. p. 855; 5 R. C. L. Supp. 185.