**STATE ex rel. MOTHERSEAD v. RAY, Trustee.**

No. 17253.     Opinion Filed May 29, 1928.

(Syllabus.)

**Banks and Banking—Judgment—Assets of Insolvent State Bank in Hands of Bank Commissioner—Enforcement of Judgment Lien on Real Estate of Bank Subsisting at Time of Insolvency.**

By virtue of the provisions of chapter 80, S. L. 1924, the assets of a state bank upon insolvency vest in the state with the State Bank Commissioner as trustee, for the use and benefit of the depositors and creditors of the bank, and with the administration thereof under the general superintending control of the district court of the county in which the insolvent bank is located. And where there is a subsisting judgment lien at the time of insolvency upon the real estate of the bank situated in the county of its location, the vesting of title to such assets is subject to the lien, and the holder thereof is entitled to preference, and may after 12

months from the date of possession by the trustee, without permission of the trustee, enforce such lien by execution and levy on such real property of the insolvent bank and sale thereof pursuant to law.

Commissioners' Opinion, Division No. 1.

Error from District Court, Tillman County; Frank Mathews, Judge.

Action by R. O. Ray, trustee, against O. B. Mothersead, State Bank Commissioner, in charge of an insolvent bank, in execution of a judgment against the insolvent. Judgment for plaintiff, and the Commissioner appeals. Affirmed.

M. W. McKenzie, for plaintiff in error.

Wilson & Roe, for defendant in error.

TEEHEE, C. On December 2, 1922, R. O. Ray, trustee for a group of landowners, as plaintiff, recovered a judgment for $10,000, against the Oklahoma State Bank of Frederick, W. S. Langford, and James Gresham, as defendants. The action was based on an escrow agreement between plaintiff, hereinafter also referred to as the judgment creditor, and Langford and Gresham, whereunder these defendants deposited $10,000 in said bank as an escrow account payable to plaintiff under certain conditions, compliance with which plaintiff had alleged. The bank disclaimed any interest in the account, but refused payment on the ground that defendants Langford and Gresham asserted title to said funds for which judgment against it was sought. Judgment in the cause was filed and entered in the judgment docket on January 27, 1923. From the judgment rendered in that cause, Langford and Gresham appealed, and as to them stayed execution of the judgment by supersedeas.

On March 17, 1925, their appeal was sustained, with the judgment of the trial court modified, whereby the appellants were granted relief from the personal judgment rendered against them, and as thus modified the judgment was affirmed. The case is reported in Langford v. Oklahoma State Bank, 109 Okla. 82, 234 Pac. 744. The mandate in that cause was filed and spread of record in the trial court on April 11, 1925.

Pending the appeal in that case, the Oklahoma State Bank, on August 4, 1923, was by the State Bank Commissioner adjudged to be insolvent, whereupon the Bank Commissioner assumed control of its assets for liquidation.

On August 11, 1925, plaintiff caused to be issued execution against the bank in enforcement of his judgment, and thereunder certain real property of the bank was levied upon.

On September 2, 1925, the Bank Commissioner filed his motion to recall and vacate the execution, and to enjoin further proceedings thereunder, on the grounds that the escrow deposit, which was the basis of plaintiff's judgment, was, in effect, a general deposit, whereby the judgment creditor had the status of a general creditor; that the judgment creditor had not filed his claim as required by chapter 80, S. L. 1924, the controlling provisions of law; that the court was without jurisdiction to enforce the judgment by execution; that at the time of insolvency of the bank, there were cash assets in the amount of $6,983.70, and enforcement of the judgment against the real estate of the bank would give the judgment creditor a preference to which he was not entitled; and that the execution interfered with the Bank Commissioner's possession of the property of the bank for purposes of liquidation as by law imposed upon him.

On hearing of the motion, it appearing that the Bank Commissioner had paid a 40 per cent. dividend to the unsecured creditors, the court ordered a like payment to the judgment creditor, but reserved judgment on the question of his preference rights, with such payment to constitute a credit if the judgment creditor thereafter be determined a preferred creditor.

On November 18, 1925, plaintiff filed his motion for leave of the court to issue a further execution in satisfaction of his judgment, on the ground that such judgment constituted a first lien upon the real estate of the bank then in the possession and control of the Bank Commissioner, who refused to acknowledge plaintiff's judgment as such lien; and that said Commissioner was attempting to sell all the assets of the insolvent bank by reason whereof such execution was necessary in protection of his rights under said judgment lien.

The Bank Commissioner moved to strike this application from the files, substantially on the grounds of his former motion to recall the execution. The motion to strike was by the court overruled, and the judgment creditor's application to issue further execution was granted, but the court reserved determination of whether the execution may be levied upon the property in the hands of the Bank Commissioner, to which order of the court the Bank Commissioner excepted. Under this execution, real property of the insolvent bank, with a net appraised value of $21,800, was levied upon, which the sher-

iff, pursuant to law, was proceeding to sell for the satisfaction of the unpaid balance of the judgment.

The Bank Commissioner renewed his motion to recall and vacate the execution, and to discharge the property levied upon, based substantially on the same grounds contained in his former like motions. The motion was denied, the execution sustained, and plaintiff adjudged a preferred creditor by virtue of his judgment against the insolvent bank, but further proceedings under the execution were stayed pending appeal from the order and judgment of the court, which the Bank Commissioner, hereinafter referred to as defendant, brought to this court for review.

In this court defendant first contends that the court erred in refusing to sustain his motion to strike from the files plaintiff's application for leave to issue the execution; and, second, that the court erred in sustaining the levy against the real estate of the insolvent bank and adjudging the judgment creditor to be a preferred creditor by virtue of his judgment rendered in Langford v. Oklahoma State Bank, supra. These grounds of challenge, being related in character, may properly be considered together as both involve the authority of the State Bank Commissioner in the possession and control of the assets of an insolvent bank for liquidation.

Thereunder, the principal contention made by defendant is, that the assets of the insolvent bank sought to be reached by execution were then in the custody of the law, and in his argument proceeds upon the theory that his possession and control of the assets having that status, no part thereof was subject to seizure under execution from any other jurisdiction.

The provisions of law controlling this cause are contained in chapter 80, S. L. 1924. By virtue of this act, the assets of a state bank, upon insolvency, vest in the state, with the State Bank Commissioner as trustee, for the use and benefit of the depositors and creditors of the bank, with the liquidation proceedings had through and under the general superintending control of the district court of the county in which the insolvent bank is located. Thereunder, the State Bank Commissioner is in effect a public receiver with all of his duties in relation to disposition of the assets of an insolvent bank thereby defined and fixed. Generally, the details of administration are, in effect, the same that attend receivership administration, for it is the duty of the Bank Commissioner to collect and conserve the assets of the insolvent bank; give notice to creditors; file an inventory of the assets and a list of creditors in the district court as in a cause therein; declare dividends and pay the same under the direction of the court; redeem pledged collateral of the insolvent, with sale of such collateral by the pledgee prohibited for a limited period pending redemption; discharge prior liens or claims against any of the assets of the insolvent under the direction of the court out of the assets in his hands, with a suspension period of 12 months within which time no action by the lienor or claimant may be had in foreclosure of such lien on the real estate of the bank without the permission of the Bank Commissioner; deposit all of the assets of the insolvent, and compound bad or doubtful debts due and owing to the bank, under the direction of the district court.

What has been said by this court upon the official status of the Bank Commissioner in relation to insolvent banks under prior acts is equally pertinent as to his status under the act here controlling. In State ex rel. Strain v. Wells, 98 Okla. 169, 223 Pac. 694, it was held that when the State Bank Commissioner took over the assets of an insolvent state bank, with an outstanding mortgage lien against a part of the assets, the Bank Commissioner took such property subject to all prior rights of the holder of the note and mortgage. The court addressing itself as to the official status of the Bank Commissioner said:

"Under the decisions of this court, unquestionably the Bank Commissioner occupies a position 'in taking charge and collecting the assets of a failed bank quite analogous to that of a receiver,' and therefore is subject to the laws governing receivers, to some extent. Many states have created by statute the office of 'public administrator,' who, by virtue of his office, immediately takes charge of the decedent's estate and administers the same according to law, if it be a case falling within the purview of the statute conferring jurisdiction upon his office. In like manner it may be said the Bank Commissioner of this state is virtually a 'public receiver' for insolvent state banks, with rights, duties, powers, and privileges defined by statute."

In Mothersead v. Lewis, 117 Okla. 167, 245 Pac. 550, involving an escrow deposit, it was held as follows:

"Where money is paid into a state bank, not as a deposit, but to be applied by the bank, according to the terms of an escrow agreement held by the bank, to the satisfaction of a mortgage assumed by the payor by the escrow agreement, the ownership of the money is retained by the payor until it is so

applied, and impressed with a trust in the hands of the bank by reason of such ownership."

Following these authorities, this court, in Mothersead v. Harrington, 123 Okla. 179, 250 Pac. 483, which also involved an escrow deposit, laid down as a proposition of law that:

"Where a Bank Commissioner, pursuant to law, takes charge of an insolvent bank for liquidation, he takes its assets subject to any trust impressed upon them,"

—and that the escrow depositor in the circumstances of the case was a preferred creditor.

While the foregoing cases arose and were determined under prior acts, the same rule was recently announced by this court in Re Matter of Planters & Mechanics Bank, Kramer v. Mothersead, 127 Okla. 209, 260 Pac. 472, involving an escrow or special deposit, which cause arose subsequent to the enactment of chapter 80, supra.

In Lawson v. Warren, 34 Okla. 94, 124 Pac. 46, 42 L. R. A. (N. S.) 183, Ann. Cas. 1914C, 139, which involved priorities between a series of notes secured by the same mortgage with the property under receivership, this court, on the character of title vested in a receiver, held that:

"A receiver holds the property coming into his hands by the same right and title as the person for whose property he is receiver, subject to liens, priorities, and equities existing at the time of his appointment."

In the body of the opinion the court quoted with approval from American Trust & Savings Bank v McGettigan, Receiver, 152 Ind. 582, 52 N. E. 793, 71 A. S. R. 345, this language:

"It is well established that, when a court takes possession of the property of an insolvent corporation, and appoints a receiver, such receiver 'is the arm of the court' by which it administers the trust for the benefit of the creditors. But the court receives such property impressed with all existing rights and equities of creditors, and the relative rank of claims, and the standing of liens remains unaffected by a receivership. Every legal and equitable lien upon the property of the corporation is preserved, with the power of enforcing it. Gluck & Becker, Rec., sec. 6; 20 Am. & Eng. Enc. of Law, p. 407; Woerishoffer v. North River, etc. Co., 99 N. Y. 398-402, 2 N. E. 407; Hubbard v. Hamilton Bank, 7 Metc. (Mass.) 340; Minchin v. Nat. Bank, 36 N. J. Eq. 436; Snow v. Winslow, 54 Iowa. 200, 6 N. W. 191; Hale v. Frost 99 U. S. 389 (25 L. Ed. 419). And it is as much the duty of the receiver, in administering an estate, to protect valid preferences and priorities, as it is to make a just distribution among the general creditors."

Under the foregoing authorities, it may now be regarded as not open to controversy that the State Bank Commissioner stands in the shoes of an insolvent bank, and that his rights, with respect to the possession and control of the assets of the insolvent, are no greater than were the rights of the bank prior to insolvency, and must administer the same in the process of liquidation under the direction and control of the court, as if he were appointed as such receiver upon original proceedings therefor, and as directed by law.

The further point is urged by defendant that he was not made a party to the action on appeal, or otherwise, by revival upon the insolvency of the Oklahoma State Bank, and for that reason the judgment is ineffective as to him. In our view, this contention is not well founded for the reason that the bank had not appealed from the judgment rendered against it, and was not a party on appeal, and thus, as to it, the judgment was effective from and after the filing and entry thereof in the judgment docket of the trial court, which was prior to insolvency, and thereupon it became a lien against all the real property of the bank situated within the county of its location. Hence, the judgment was a subsisting lien against the real property of the bank at the time when the Bank Commissioner took possession of the bank assets, with proceedings thereunder for the satisfaction thereof postponed for a period of 12 months after possession by the defendant without his permission. It appears that plaintiff did not invoke his legal remedy by process of levy until more than 12 months after insolvency, and that if it were necessary to secure the permission of the court, as is the general rule in such cases to which defendant refers, though it is not here necessary to so decide, the record shows that this was done. It is proper to observe, however, that the property involved was in the superintending control of the same court wherein the judgment under which the judgment creditor claimed his lien was rendered.

In our view, therefore, the position of defendant in this cause is based upon untenable ground, as his possession and control of the assets of the insolvent bank for purpose of liquidation was subject to plaintiff's lien against the real property of the bank, with his duties in relation to administration and disposition of such assets clearly defined and fixed by law, and that the judgment creditor by virtue of his judgment was

entitled to preference, and was rightfully in pursuit in his remedy for the enforcement thereof.

Accordingly, the order and judgment of the district court is affirmed.

BENNETT, REID, LEACH, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See 23 C. J. p. 334, § 64.