Note.—See under (1) 29 Cyc. p. 1183 (Anno); anno. 31 L. R. A. (N. S.) 608; L. R. A. 1918A, 829; 23 A. L. R. 745; 25 A. L. R. 953; 20 R. C. L. p. 455; 3 R. C. L. Supp. p. 1075; 5 R. C. L. Supp. p. 1109. (2) 29 Cyc. p. 1250; 20 R. C. L. p. 439. (3) 29 Cyc. p. 1160; 20 R. C. L. p. 440; 3 R. C. L. Supp. p. 1071; 6 R. C. L. Supp. p. 1213.

## VAN METER v. STATE ex rel. MOTHERSEAD, Bank Com'r.

No. 18082.　Opinion Filed June 5, 1928.

Rehearing Denied Sept. 18, 1928.

(Syllabus.)

1. **Banks and Banking—Failed State Banks —Status and Control of Assets in Hands of Bank Commissioner.**

By virtue of the provisions of chapter 80, Sess. Laws 1924, the assets, moneys, notes and bills receivable of a state bank, upon insolvency, vest in the state with the State Bank Commissioner as trustee for the use and benefit of the depositors and creditors of the bank and with the administration thereof under the general superintending control of the district court of the county in which the insolvent bank is located.

2. **Same—Appeal and Error—Judgment on Note in Hands of Bank Commissioner Sustained.**

In a civil action by the State of Oklahoma ex rel. Bank Commissioner to recover the balance due on a promissory note executed by defendant to a state bank later taken over as an insolvent institution under chapter 80, S. L. 1923-24, where the execution of the note is admitted and the only question involved in suit is the ownership of the note sued on, and where a jury is waived and the case is tried to the court, who finds generally for the plaintiff, and where the evidence reasonably supports the finding, the same will not be disturbed on appeal.

3. **Same.**

Evidence examined, and held, that it supports the judgment.

Commissioners' Opinion, Division No. 2.

Error from District Court, Oklahoma County; Lucius Babcock, Judge.

Suit by State of Oklahoma ex rel. Bank Commissioner against M. V. Van Meter on promissory note. Judgment for plaintiff, and defendant appeals. Affirmed.

Reuben M. Roddie, for plaintiff in error.

Pounders & Pounders, for defendant in error.

BENNETT, C. State of Oklahoma ex rel. O. B. Mothersead, Bank Commissioner of state of Oklahoma, brought suit in district court of Oklahoma county, Okla., against M. V. Van Meter for recovery of balance due on a promissory note executed by Van Meter to First State Bank of Bristow on July 17, 1922, for the sum of $3,500, due and payable on December 17th of the same year, and

provided for ten per cent. attorney's fee in event of default. There appeared on said note a credit of $1,132.65 as of August 9, 1922.

The parties waived a jury and the case was tried to the court who, after hearing the testimony, rendered judgment for the plaintiff and against defendant for the full balance of said note, interest thereon and attorney's fee, and from which judgment defendant appeals to this court for review. The parties will be herein referred to as they appeared in trial court.

Plaintiff's amended petition, omitting formal parts, alleged the execution and delivery by defendant of said promissory note sued on to First National Bank of Bristow, Okla.; copy whereof is attached, made part thereof as exhibit A; that on August 9th the payment of $1,132.65 was made and indorsed on the note, but plaintiff does not know what officer of the bank received the payment; that such officers, after the bank became insolvent, became scattered and went beyond the state; that on January 9, 1924, payee, First State Bank of Bristow, became insolvent, and was so declared by Bank Commissioner of state of Oklahoma, and on that account and on that date said bank, with all of its accounts, money and property, including the note here sued on, was taken over for liquidation by said Bank Commissioner of state of Oklahoma, and that plaintiff is now owner and holder of said note, and that same is due and unpaid.

Defendant for his answer sets up a general denial subject to the admission that he executed and delivered the note sued on. He denies making any payment thereon, and alleges that he received nothing of value; that he executed said note as an accommodation to one J. S. Mullins, who was, at that time, an active managing officer of said bank. Plaintiff filed a reply consisting of general denial The following is the substance of the testimony:

Plaintiff introduced the note sued on and the order of the Bank Commissioner taking charge of First State Bank of Bristow, which order declared the bank to be an insolvent institution. The defendant introduced J. D. Pennington, a state bank examiner, and showed that he was the examiner who took charge of First State Bank of Bristow; also a petition filed by Bank Commissioner in district court of Creek county to sell certain assets of the insolvent bank to Community State Bank of Bristow. and a contract between O. B. Mothersead, Bank Commissioner, and Community State Bank of Bristow, rep-

resenting a purchase by latter bank of a large part of the assets of the insolvent bank. It is provided by this contract also that other assets of the insolvent bank should stand as collateral to the prompt payment of the items purchased outright by the Community Bank from the insolvent; also, a journal entry of judgment by district court of Creek county authorizing Bank Commissioner to make sale of certain assets of the insolvent bank, in accordance with the terms of contract above set out. There are introduced lists of the bills and notes sold outright, and also of the bills and notes disposed of as collateral by the Bank Commissioner to the Community Bank. Neither of these lists include the note sued on. Witness Pennington's testimony as to what property was delivered under the sale is first that all the assets of the insolvent were included, but later he is somewhat uncertain.

M. V. Van Meter, defendant, testified, in substance: That he is defendant, and he identifies his signature on the note sued on; says that about four years ago, when the note sued on was executed, he was manager of the campaign of Mark Louthan for State Treasurer, and that J. S. Mullins, who was a dear friend of witness and of Louthan's, agreed with witness that, if witness would do the work, he would finance the campaign for Louthan; that note was given for that purpose. He (Mullins) said that he could finance it that way. Witness was never supposed to pay it. The note was to be taken up long before this. Mullins said that he owned the bank, and trusting him and knowing him, and that said Mullins at that time was supposed to be many times a millionaire, witness signed the note. Says they were all in a hurry and a rush; did not expect any liability; that he afterwards understood that a mortgage had been given as collateral for the note. Thought nothing of liability, for it was Mullins' transaction. Did not know the officers of the Bristow Bank personally at the time the note was signed; had never been in the bank; witness signed note and gave it to Mullins who took same to bank and had the money placed to witness' credit on account. Never paid anything on note, but at the time Banking Department took the note over, there remained in witness' account in said bank as a part of the proceeds of the note a balance of about $1,250, and this was applied as a credit on note; witness cannot remember exact circumstances or exact amounts, but that is substantially correct.

Cross-examination: Witness drew checks on said deposit in First State Bank of Bris-

tow. The difference between amount credited on the note and sum borrowed, after deducting interest paid in advance, represents amount of defendant's checks; that is substantially correct. Witness of his own knowledge does not know, except from information given him, that Mullins had charge of the bank, but he represented to witness that he bought the bank or an interest in the bank.

"Q. I am asking you, you don't get my question, I am asking you if you know of your own knowledge that he had the controlling interest? A. Nothing other than he, his statements of that fact, that he hypothecated the notes. Q. That's all? A. Yes."

It was stipulated that if J. S. Mullins were present and sworn as a witness in the case on behalf of defendant, he would testify in substance that in summer of 1922, witness with some friends bought more than 50 per cent. of the stock of the First State Bank of Bristow, and that he asked defendant to sign a note for his use and benefit at First State Bank of Bristow for $3,500; that the note was signed, discounted and the money turned over to Mr. Van Meter and placed to his credit in the bank; that shortly thereafter witness and his associates discovered that the Banking Department had ordered a $25,000 stock assessment against the stockholders, and had directed that certain notes thought doubtful, amounting to $25 000, should be taken out of the bank. Upon receipt of this information they rescinded their agreement to purchase the stock, and turned back the assets of the bank along with the note sued on; that witness went to the Banking Department and offered to make the note good so far as he was able and executed a second mortgage on his home and endorsed along with it a note in the sum of $750, which note the witness owned at that time; that the Banking Department accepted the mortgage on his home and the note as security for the indebtedness. Defendant rested, and plaintiff introduced rebuttal evidence as follows:

L. K. Pounders, witness for plaintiff: Witness has lived for five years in Bristow; was designated attorney for liquidating agent by Bank Commissioner; spent 30 days organizing Community State Bank, being attorney for liquidating agent; was in the place of business of First State Bank and in new place of business of liquidating agent, W. S. Simons, two or three times almost every day the first month or so after liquidation started. Witness went back and forth between the old bank building and the offices of the liquidating agent.

Remembers and knows about the contract for the sale of assets to Community Bank, and of the arrangement for collateral therefor. The Van Meter note was not included in either the assets sold outright, or among those pledged as collateral. The notes which were pledged as collateral to Community State Bank were never delivered to said bank. A new arrangement was made about this collateral on the 13th of February, 1925, whereby it was agreed between O. B. Mothersead and the Community State Bank that the original contract relating to collateral should be changed and reformed so as to more accurately speak the intent and purpose of the parties thereto. The modification is represented in the following words:

"All bills receivable pledged as collateral in the original sum of $351,445.54 shall remain in the exclusive control and custody of the party of the first part, and such first party hereby retains the full legal title thereto with all rights incident to such legal title.

"In consideration of the second party's releasing its equitable lien upon said so-called collateral, and entering into this supplemental agreement, first party hereby agrees and binds himself to proceed through proper liquidating agent to press the collection of said so called collateral, and as fast as the same is realized upon the funds so collected, less all proper expense (no salary to liquidating agent shall be paid) shall be delivered to the Community State Bank in exchange for an equal amount of the bills receivable actually sold to said bank, and to it delivered."

Witness says the note sued on in this case was placed in his hands for collection prior to August 25, 1925 He knew of the transaction with reference to the proposed purchase of the interest in the First State Bank by Mullins; has known Mullins for years, and never saw him in Bristow; never saw him in the bank there, although witness was in or about the bank every day. Witness says that the $700 note and mortgage referred to by Van Meter and in the statement of Mullins was held by another bank, and that the other bank brought suit on the note and mortgage some months before the note in suit was signed, and that this note had nothing to do with the note in suit.

M. V. Van Meter, recalled, says: That he did not use any of this money for his own personal benefit.

It will be observed: (1) That the answer to the petition is a general denial; (2) that there is no plea of payment and no testimony showing voluntary payment in whole or in part of this note; (3) that the plaintiff is

in possession of the original note upon which he brings suit and surrenders the same for cancellation at the time of judgment.

The main contention on the part of defendant seems now to be that the Community State Bank is the owner of this note, and that therefore the plaintiff has no right to sue thereon. What are the facts about ownership? It is certainly true that the provisions of chapter 80, Session Laws 1924, were in force at the time of the transaction in question, and under the terms of the act, the State Bank Commissioner, in taking over the assets of an insolvent bank, is, in effect, a public receiver with all of his duties in relation to disposition of the assets of an insolvent bank thereby defined and fixed. State of Oklahoma ex rel. Mothersead v. Ray, 131 Okla. 45, 267 Pac. 844; State ex rel. Strain v. Wells, 98 Okla. 169, 223 Pac. 694; Mothersead v. Lewis, 117 Okla. 167, 245 Pac. 550; Mothersead v. Harrington, 123 Okla. 179, 250 Pac. 483; Planters & Mechanics Bank v. Mothersead 127 Okla. 209, 260 Pac. 472.

"A receiver holds the property coming into his hands by the same right and title as the person for whose property he is receiver, subject to liens, priorities, and equities existing at the time of his appointment." Lawson v. Warren, 34 Okla. 94, 124 Pac. 46, 42 L. R. A. (N. S.) 183.

Under the foregoing authorities, it is settled beyond controversy that State Bank Commissioner stands in the shoes of an insolvent bank, and his rights with respect to possession and control of assets of the insolvent are no greater than the rights of the bank prior to insolvency, and that he must administer same in process of liquidation under direction and control of the court as if he were appointed as such receiver upon original proceedings therefor and as directed by law.

This note, therefore, was a part of the assets of the insolvent bank, passed into hands of the Bank Commissioner charged with the duty of collecting same. Did it ever pass out of his hand? Under this record the only way that it could be contended that it passed was by the sale to Community Bank, or by the disposition of same by the Commissioner as collateral to Community Bank. The defendant introduced in evidence a list of the bills and notes receivable sold by the Commissioner to Community Bank. The aggregate sum of these items was $252,355.85. These items are alphabetically arranged according to the names of maker, and each item is given a separate number, and the amount due is set opposite, and the

title of the list is as follows: "Loans and discounts of the defunct First State Bank of Bristow, Okla., sold to the Community State Bank of Bristow, Okla." From an examination of this list the note in suit is not included by number, by name, or amount therein. A similar list is made of the bills and notes representing the collateral pledged to the Community State Bank. The aggregate of this list is $351,445.54. Each of the items composing this list is alphabetically tabulated, given a separate number, and showing the amount due set opposite. The note in suit is not included either by number, name or amount in this list. These lists foot up the exact total, barring a discrepancy of three cents called for in the contract as being the amount of assets sold and the amount of assets deposited as collateral between the parties.

The record is all that there is before us, and from this record, even if we were called upon to weigh the proof, we would conclude that the Van Meter note never passed out of the possession or the ownership of the Bank Commissioner. It might have been originally the intention to include it, but, if so, they did not carry out their intention, or they abandoned their intention. We might add that if it had been so included, it would also have been paid for. From this record it has not been paid for, and to add it arbitrarily to the list would be to contradict a contract in writing which no one has assailed upon any ground, and for the correctness of which defendant vouches by offering in evidence.

Plaintiff in error contends that the action should have been brought by Community State Bank, and that defendant in that case would have been able perhaps to set out other equities against the collection of the note not available to him at the suit of the Bank Commissioner. It has been many times held that the Bank Commissioner is not a purchaser of the assets of failed banks; that he holds the same as a receiver and subject to the lien, priorities and equities existing at the time of failure of the bank. Mothersead v. Wiley, 114 Okla. 105, 243 Pac. 718. But that is outside the case, for it has been found that Bank Commissioner is the owner of this paper.

Defendant claims further that there was no consideration. The proof conclusively shows that the bank deposited to defendant's account $3,500, less interest deducted, and that defendant checked it all out except eleven hundred odd dollars, for which he was given credit on the note. We are not favored with any specific evidence as to how de-

fendant spent the money, unless it is assumed from rather general statements that he spent it for campaign purposes for the benefit of a friend of his. Somehow, we cannot conclude that it is very material here. The bank, upon the strength of defendant's note, parted with its money; the defendant received it and spent it, and has not repaid it. Defendant's only answer to this is that a friend of his had agreed to purchase an interest in the bank, and succeeded in having defendant's note discounted thereat. There is no proof in the record that this obliging friend was ever a president, vice president, director, or cashier of this bank.

The trial judge tried the facts as to who was the owner of the note, and whether or not the defendant was liable thereon, and he made his finding generally for plaintiff. We have not only examined carefully the briefs, but the entire record, and we hold that the finding of the court is in all respects proper and properly supported, and the judgment is therefore affirmed.

TEEHEE, FOSTER, JEFFREY, and LEACH, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 7 C. J. p. 742, §518. (2) 4 C. J. p. 879, §2853. (3) 38 Cyc. p. 1976.