ROYCE *et al.* v. BANK OF COMMERCE OF WALTER.

No. 2034, Okla. T.   Opinion Filed June 24, 1908.

(96 Pac. 640.)

BANKS AND  BANKING — Repair of Assets by Bank Officers — **Subrogation.** In a case where the territorial bank commissioner required the officers of a bank to repair its assets by making a deposit of $2,000 on the erroneous assumption that certain notes were lost and the said officers made a deposit to cover the amount thereof, on the discovery and return to the bank of the · said notes, the officers making the deposit aforesaid are entitled to be subrogated to the rights of the bank in the notes or the proceeds thereof, and it is error to sustain a demurrer to an answer setting up such facts.

(Syllabus by the Court.)

*Error from District Court, Comanche County; F. E. Gillette Judge.*

Action by the Bank of Commerce of Walter against S. R. Royce and others. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

· July 15, 1905, the Bank of Commerce of Walter, Okla., filed its petition in the district court of Comanche county against the above named plaintiffs in error, S. R. Royce, J. W. Ross, and A. B. Snow, who will hereafter be denominated defendants, together with the First National Bank of Walter, Okla., in which it is alleged that a certain promissory note was made, executed, and delivered on November 26, 1904, by S. R. Royce, J. W. Ross, and A. B. Snow to the First National Bank of Walter, Okla., in which they promised to pay to it or its order, 60 days after date, the

sum of $2,000, with interest and attorney's fees; that thereafter, on the 27th day of December, 1904, the payee of said note indorsed the same to the Bank of Commerce, writing across the back thereof the following: "12-27-04, Pay Bank of Commerce or order with recourse on us. Signed, First National Bank, Walter, O. T., Geo. W. Graham, Pt."—that the defendants on the 26th day of January, 1905, paid on the note the sum of $1,180.30, and asked judgment for the balance due, with interest and attorney's fees.

The First National Bank filed a verified answer, setting up that neither it nor either of its officers ever indorsed upon the back of said note "Pay Bank of Commerce or order with recourse on us," but alleged that the indorsement was "Pay Bank of Commerce or order without recourse on us," and that this indorsement had been altered by some one unknown to them after the paper had left their hands. The defendants Royce, Ross, and Snow filed a general denial, and in a separate paper filed what they termed a special answer, in which they set up all the facts which they claimed transpired and took place in the issuance and delivery of this paper. To this special answer the plaintiff filed a demurrer, which was sustained.

Thereafter defendants, by permission of the court, filed what they termed their second special answer, in which they alleged, among other things, that these defendants J. W. Ross was president, A. B. Snow vice president, and S. T. Ross directors, of plaintiff bank, and on the 26th day of November, 1904, said bank was examined by Hon. Paul F. Cooper, bank commissioner of Oklahoma Territory, who found that the assets of said bank were impaired to such an extent that it would require $2,000 to reestablish it, and called upon and required these defendants as officers of said bank to place within the same the said sum, or suffer the said bank to close and cease doing business; that thereupon the said defendants called upon the president of the First National Bank, their codefendant, and gave to him the note in question, receiving the sum of $2,000 therefor, which was placed.

in the plaintiff bank; that from an investigation it developed that notes to the amount of $938.90 were lost, missing, or mislaid from the files of the said bank, and that this was a portion of the deficiency which the $2,000 borrowed, as aforesaid, was required to cover; that about two weeks after the 26th day of November, 1904, the said notes which were described in the answer were found and restored to the bank; that the defendants, having placed the money in the bank to cover these lost items and credits, were entitled to the same, and that they called on the cashier therefor and had been denied; that, having paid this deficiency, they were entitled to be subrogated to the rights of the bank in this paper; that the assets thus discovered exceed the balance due from the defendants on the note for which they asked credit. To this special answer demurrer was filed and sustained, to which exception was taken, and error is assigned therefor.

The case was tried by a jury and a verdict was rendered in favor of plaintiff. All the defendants have joined in bringing the case here by proceedings in error.

*B. M. Parmenter* and *C. M. Myers,* for plaintiff in error First National Bank.

*Jas. H. Wolverton,* for plaintiffs in error S. R. Royce, J. W. Ross, and A. B. Snow.

*Young & Ellis,* for defendant in error.

DUNN, J. (after stating the facts as above). In the decision of this controversy it will be unnecessary to consider more than the proposition of whether or not the court erred in sustaining the demurrer to defendants' special answer. Strictly speaking, a special answer is unknown to our practice. On the filing of a petition defendant may file a motion, demurrer, or answer, and, although he may denominate his pleading a special answer, and even though it may appear in separate parts for the purpose of its construction, it will be considered in accordance with the statute and his intention, but one pleading and one answer. De-

fendant urges as error the action of the court in sustaining a demurrer to his so-called "Special Answer." This raises the question as to whether or not the allegations contained therein constitute a defense or counterclaim to the cause of action set up in plaintiff's petition.

It will be observed from the allegations that the bank commissioner believed and found that the assets of plaintiff bank were impaired to the extent which in his judgment justified him in calling upon the defendants Royce, Ross, and Snow, officers of the bank, to make good the deficiency under penalty of having it closed; that among other things which caused and occasioned this belief and finding was the absence of the notes mentioned aggregating the sum of $938.90; that these defendants borrowed the money, and placed it in the bank to take the place of these missing assets, and now, when being sued upon this note, claim that, since the bank has been made whole upon these items by their cash deposit, these notes should, in fact, belong to them. In other words, that these defendants having saved the bank and placed in it the amount of these missing items, the bank ought not to keep both their money and the notes or the proceeds thereof, and the defendants should be permitted to be subrogated to the rights of the bank in these items. In our judgment this contention is correct. To hold otherwise would be to permit the bank to not only hold these assets, but to take from these defendants without any consideration whatever the funds which they advanced to protect it, and would enable the other stockholders, to apportion among themselves, along with these defendants, the money advanced by the defendants, and this without any consideration whatsoever.

The bank takes the position in its brief that this advancement by these defendants was a voluntary assessment, and defendants cannot recover by reason thereof, and cites in support thereof the case of *Brodrick v. Brown* (C. C.) 69 Fed. 497. We have examined that case, but in our judgment the facts are not at all the same as in the case at bar. It will be observed that in the case cited each of the stockholders of the bank was assessed 50 per

cent. of his stock, and the general cash book of the bank contained the entry denominating it a voluntary assessment. It was advanced by all the stockholders to repair an actual impairment of the credit of the bank, and was intended by them at the time to be an assessment. In the case at bar it will be observed that but three of the six stockholders as alleged in the answer advanced anything, and that was a lump sum of $2,000, and this under the mistaken conditions as averred. Whatever may have been the effect of the payment or deposit made necessary to have restored the assets actually impaired, whether a voluntary assessment or not, it is clear that the principle controlling it would not obtain as to the deposit made under the conceded mistake, the purpose and intention of which being to supply assets believed to be lost. But, when it was discovered that such assets were not in fact lacking or lost, but merely misplaced, and that all parties acted under and through the erroneous, though honest assumption that they were lost, then certainly, when they are discovered and restored, those who have come to the rescue of the bank when it was in danger ought not, by reason of this magnanimous act on their part, to be made to suffer and the other stockholders who have been the recipients be permitted, not only to keep the restored assets, but also the funds advanced to take their place.

The case is accordingly reversed and remanded to the district court of Comanche county, with instructions to set aside the judgment heretofore rendered and to grant a new trial.

All the Justices concur.