UNITED STATES FIDELITY & GUARANTY CO. v. STATE ex rel. SHULL, Bank Com'r.

No. 20052.   Opinion Filed Jan. 26, 1932.

Rehearing Denied April 26, 1932.

Rittenhouse, Lee, Webster & Rittenhouse, for plaintiff in error.

L. V. Orton, for defendant in error.

CULLISON, J. This is a suit to collect upon a bond issued by the United States Fidelity & Guaranty Company, defendant, in favor of the Yale State Bank, wherein defendant agreed to reimburse the Yale State Bank for pecuniary loss sustained by said bank as a result of embezzlement or larceny of funds of said bank by D. L. Martin, president of said bank.

The parties will be referred to as they appeared in the lower court.

The record discloses that the Yale State Bank fai'ed to open its doors for business on August 14, 1922, and that the Bank Commissioner of the state of Oklahoma took charge of the affairs of said bank immediately thereafter. In the process of liquidating said bank, about May 19, 1923, and within the six months' period, the agents of the Commissioner discovered that the president of the bank, D. L. Martin, had, by divers means, converted to his own use a large amount of the funds properly belonging to the bank, and demand was made upon the United States Fidelity & Guaranty Company to pay under the terms of said bond for the shortage of Martin. Defendant refused to pay said claim.

The cause was tried to the court without a jury and the court made the following findings:

### Findings of Fact.

(1) The court finds that the $5,000 bond sued upon in this case was issued November 24, 1917, and went into effect December 1, 1917, and run to December 1, 1918, under the first premium that was paid, and that thereafter yearly premiums were paid, and accepted by the defendant company, and that the last premium that was paid extended the bond until December 1, 1922, and that the bond was in full force and effect until that date.

(2) The court finds that at all times mentioned, D. L. Martin was president of the Yale State Bank, and that said bank was taken over by the State Bank Commissioner August 14, 1922, because of insolvency, and that the said D. L. Martin stayed around said bank for a few weeks assisting those in charge.

(3) The court further finds that the said D. L. Martin was dishonest and committed frauds upon and against said bank in connection with the duties of his office as president while said bond was in force and effect, and which amounted to embezzlement and larceny, and by reason thereof the bank lost approximately $25,000.

(4) The court further finds that said loss was discovered within six months after termination of the bond, and within three months thereafter a verified proof of loss was furnished to the defendant company. That the proof of loss was mailed to the defendant company on or about the 9th day of June, 1923, in accordance with the terms of the bond, and duly received by the company, and said proof of loss was, on the 12th day of July, 1923, returned by the defendant company to the liquidating agents of the Yale State Bank, and defendant company refused payment.

(5) The court finds that the State Bank Commissioner and the liquidating agents and attorneys did all things that were necessary, under the terms of the bond, and according to the terms of the bond, so far as furnishing proof of loss and furnishing information to defendant company, and that a short time after the bank closed, representatives of the defendant company were at the bank examining the books and records and checking up the books and records of the bank.

(6) That this suit was instituted by the plaintiff on the 17th day of August, 1923.

### Conclusions of Law.

The court concludes that, as a matter of law, the defendant company is liable in the sum of $5,000 on said bond, together with six per cent. interest thereon, since the 12th day of July, 1923, when payment was refused.

Defendant appeals to this court and alleges as error:

First, the loss complained of was not discovered within the time limited by the bond.

Second, no notice was given to defendant as required by the bond.

Third, proof of loss was not furnished to defendant within the time specified in the bond.

In discussing plaintiff's first proposition, we find from the record that the bond under consideration was issued on December 1, 1917, for a period of one year, and that thereafter the premiums were paid on said bond and said bond extended from year to year, and that said bond was in force and effect up to December 1, 1922.

The bond contains the following provision:

"* * * Now, therefore, this bond witnesseth, that for the consideration of the premises, the company shall during the term above mentioned, or any subsequent renewal of such term, and subject to the conditions and provisions herein contained, at the expiration of three months next, after proof satisfactory to the company, as hereinafter mentioned, make good and reimburse to the said employer such pecuniary loss as may be sustained by the employer by reason of the fraud or dishonesty of the said employee in connection with the duties of his office or position, amounting to embezzlement or larceny, and which shall have been committed during the continuance of said term, or of any renewal thereof, and discovered during said continuance or of any renewal thereof or within six months thereafter, or within six months from the death or dismissal or retirement of said employee from the service of the employer within the period of this bond, whichever of these events shall first happen. * * *"

The bond provides that defendant will make good any loss discovered during the continuance of any renewal thereof, or within six months thereafter, or within six months from the death, dismissal, or retirement of said employee from the service of the employer within the period of this bond, whichever of these events shall first happen.

Defendant contends that since the bank failed on August 14, 1922, and the State Bank Commissioner took over the bank and assets, said act of the Bank Commissioner terminated the existence of the bank, and would be the date from which the limitation on liability would run; that the six months period specified in the bond would date from that date.

Plaintiff maintained the suit upon the theory that, since the bond was in force and effect and the premiums paid thereon up to December 1, 1922, the limitations imposed in the bond would not begin to run until December 1, 1922, because Martin had not been dismissed by the bank, nor had he left its employ.

Plaintiff swore to proof of loss on June 9, 1923, and forwarded same to defendant, which defendant refused on July 12, 1923.

If the bond terminated as contended by defendant, the limitation within the bond had expired before plaintiff furnished defendant with notice and proof; however, if the bond did not expire until the date for which the premium was paid, December 1, 1922, the same was within the period of the bond.

As we view this question, Martin did not retire from the employment of the bank; neither was he dismissed. It is true that the Bank Commissioner took charge of the affairs of said bank for the purpose of saving for the depositors as much of their deposits as possible, but the Bank Commissioner and his agents did not dismiss Martin as president of the bank. Neither did he retire as said official. Under the terms of the bond said bond continued in force and effect to December 1, 1922, because Martin had not been dismissed or retired as an official of said bank.

We consider and hold: That the finding of the trial court that the bond was in force and effect until December 1, 1922, is a correct construction of the terms and conditions of said bond.

Defendant's second and third specifications of error will be considered together. The bond provides that defendant shall be given notice as soon as any discrepancies are discovered touching the conduct of said D. L. Martin. The record discloses that the first notice given defendant was when plaintiff forwarded to defendant the proof of loss heretofore mentioned. The proof of loss was furnished defendant within the time prescribed by the bond and the proof of loss gave notice to the defendant of the shortage in the account of Martin.

We will discuss the second and third specifications of error according to the parties' rights under the pleadings.

Plaintiff pleaded in its petition that the bond was in force and effect and that defendant was liable thereon. Defendant for its answer filed a general denial. The defenses sought to be raised by defendant, to wit, certain conditions of the bond, are defenses which must be taken advantage of by defendant if he desires to secure the advantage of said defenses, but it is not necessary that defendant take advantage of these defenses, and if it so desires it can waive them. If defendant desires to take advantage of the defenses sought to be raised, under our rules of pleading, the same should have been pleaded in its answer.

In the case of Continental Gin Co. v.

Arnold, 52 Okla. 569, 153 P. 160, this court passed upon the question under consideration and held:

"The general rule of pleading is that defenses which assume or admit the original cause of action alleged, but are based upon subsequent facts or transactions which go to qualify or defeat it, must be pleaded."

In the case at bar, defendant seeks to defeat plaintiff's cause of action because of certain clauses and conditions in the bond sued upon. Under the holding of the court just announced, supra, if defendant desired to take advantage of said defense, it was its duty to plead the same, and if it did not plead said defense, it is held to have waived the same.

This case was tried to the court without a jury, and at the conclusion of said trial the court made findings of facts and conclusions of law in favor of plaintiff.

We have examined the entire record in said cause, and find that the evidence supports the findings of fact made by the trial court. This court has many times held that where a case is tried to the court without a jury, and the court makes findings of facts in said cause, the same will not be reversed by this court where there is competent evidence to support said findings. Florence v. Thompson, 92 Okla. 156, 218 P. 800; Rock v. Robinette, 92 Okla. 123, 218 P. 808.

After a full and fair consideration of the entire case, we are of the opinion and hold: That the trial court correctly construed the law. The judgment of the trial court is affirmed.

LESTER, C. J., and RILEY, HEFNER, SWINDALL, ANDREWS, and KORNEGAY, JJ., concur. CLARK, V. C. J., dissents. McNEILL, J., disqualified.

---

CLARK, V. C. J. (dissenting). The bond involved in question contains two provisions which were before this court for construction; the construction given these two provisions by the majority opinion destroys the effect of them.

The bond was renewed by payments of premiums by the terms of its provisions until December 1, 1922. The provisions of the bonds presenting these propositions are as follows:

"Now, therefore, this bond witnesseth: That for the consideration of the premises the company shall, during the term above mentioned, or any subsequent renewal of such term, and subject to the conditions and provisions herein contained, at the expiration of three months next, after proof satisfactory to the company, as hereinafter mentioned, make good and reimburse to the said employer, such pecuniary loss as may be sustained by the employer by reason of the fraud or dishonesty of the said employee in connection with the duties of his office or position, amounting to embezzlement or larceny, and which shall have been committed during the continuance of said term, or of any renewal thereof, and discovered during said continuance or of any renewal thereof, or within six months thereafter or within six months from the death or dismissal or retirement of said employee from the service of the employer within the period of this bond, which ever of these events shall first happen; the company's total liability on account of said employee under this bond or any renewal thereof, not to exceed the sum of $5,000.

"This bond is issued upon the following express conditions:

"First: That on the discovery of any act capable of giving rise to a claim hereunder, the employer shall, at the earliest practical moment, give notice thereof to the company, and any claim made under this bond shall be in writing addressed to the company at its head office in the city of Baltimore; and shall within three months after the discovery thereof, at the employer's expense, furnish to the company reasonable particulars and proofs of the correctness of said claim, and such particulars, if required, shall be verified by affidavit.

"Tenth: This bond will become void as to any claim for which the company would otherwise be liable, if the employer shall fail to notify the company of the occurrence of the act or omission out of which said claim shall arise immediately after it shall come to the knowledge of the employer.

"Thirteenth: That no one of the above conditions, or of the provisions contained in this bond, shall be deemed to have been waived by or on behalf of the company, unless the waiver be clearly expressed in writing over the signature of its president and its secretary, and its seal thereto affixed."

It is agreed that the bank was declared insolvent by the State Bank Commissioner on the 14th day of August, 1922; in fact, the opening statement of attorney for the plaintiff stated that the bank closed its doors on August 12, 1922, and did not open on August 14, 1922, and has been closed ever since that date; that the bank was hopelessly insolvent, was taken over by the State Bank Commissioner, that J. R. Potts and I. A. Tull were appointed liquidating agents,

qualified and are still liquidation agents of the bank.

In the case of State ex rel. v. Wells, 98 Okla. 169, 223 P. 694, in the opinion it is said:

"Under the decisions of this court, unquestionably the Bank Commissioner occupies a position, 'in taking charge and collecting the assets of a failed bank, quite analogous to that of a receiver, and therefore is subject to the laws governing receivers, to some extent. * * *"

In Mothersead v. Wiley, 114 Okla. 105, 243 P. 718, it was held:

"The State Bank Commissioner in charge of the assets of a failed bank acts in the capacity of a receiver and holds the property of the failed bank coming into his hands by the same right and title as the bank for whose property he is such receiver. * * *"

In Van Meter v. State ex rel., 132 Okla. 230, 270 P. 41, it was held:

"The assets, moneys, notes, and bills receivable of a state bank, upon insolvency, vest in the state with the State Bank Commissioner as trustee for the use and benefit of the depositors and creditors of the bank and with the administration thereof under the general superintending control of the district court of the county in which the insolvent bank is located."

Undoubtedly, under the holdings above quoted, after the State Bank Commissioner declared the bank insolvent, took over its assets as State Bank Commissioner, said assets vested in the state with the State Bank Commissioner, as trustee for the benefit of depositors and creditors, D. L. Martin, as president of the Yale State Bank, thereafter did not and could not perform any services for the Yale State Bank as a corporation, his authority was superseded by the State Bank Commissioner, and he thereafter could not and did not perform any services as president of said bank.

A provision of the bond in question is that any loss must be discovered during the continuance of said term of the bond or of any renewal thereof and discovered during the continuance of the renewal thereof or within six months thereafter or within six months from the death or dismissal or retirement of said employee from the services of the employer within the period of this bond.

D. L. Martin retired from the service of the employer, Yale State Bank, on August 14, 1922, and to make the bonding companies liable for his default on this bond, the loss must be discovered within six months from that date, and a petition that did not allege said facts did not state a cause of action, and plaintiff's supplemental petition alleged the loss was discovered on or about the 15th of April, 1923. The six months expired after D. L. Martin's retirement from the service of the bank, February 14, 1923, and it was more than eight months, according to the allegations of plaintiff's amended petition, before the loss was discovered, after the retirement of Martin from the service of the Yale State Bank.

The Supreme Court of the United States, in the case of American Surety Company of New York v. Frederick N. Pauly, as receiver of the California National Bank of San Diego, Cal., 170 U. S. 160, 42 L. Ed. 987, passed squarely on this question. In the fifth headnote it is said:

"The mere suspension of a national bank, followed by an investigation of its affairs by a bank examiner, does not have the effect to retire its president from his position, but he remains in its service until the receiver takes possession."

This case clearly holds that the president of the bank was suspended when the receiver took charge of its affairs, and he was therefore retired from the services of his employer, the Yale State Bank.

The trial court found that said D. L. Martin stayed around said bank, assisting those in charge. If he did, he was there under the direction and control of the State Bank Commissioner, who was in charge, and not as president of the Yale State Bank, nor in the employ or services of the Yale State Bank.

Under the holding in the majority opinion, in the case of an insolvent state bank taken over by the Bank Commissioner, that all officers and employees of said bank, unless discharged by the board of directors, would still be in the services of said bank, would entitle said officers and employees to all salaries and compensation provided by contract with said bank as pay for their services.

I do not believe that this court should go that far, and I am of the opinion that D. L. Martin retired from the services of the Yale State Bank on the 14th day of August, 1922, and the loss not being discovered within six months thereafter, the plaintiff in error is not liable under terms and conditions of the bond.

A further condition of the bond was not complied with, which is as follows:

"That on the discovery of any act capable of giving rise to the claim hereunder, the employer shall at the earliest practical moment give notice thereof to the company, that any claim made under this bond shall be in writing, addressed to the company, at its head office in the city of Baltimore."

The failure on the part of defendants in error, plaintiffs below, to give notice within a reasonable time to the bonding company, plaintiff in error, precludes the recovery. The record discloses that the first notice given was on June 9, 1928, about 60 days after it is alleged the loss was discovered, more than six months after the bond had expired and more than nine months after the president, D. L. Martin, had retired from the service of the bank.

For the reasons stated, I am of the opinion that this cause should be reversed and remanded to the trial court, with directions to dismiss.

Note.—See under (2) 21 R. C. L. 534; R. C. L. Perm. Supp. p. 5070.