## UNITED STATES F. & G. CO. et al. v. STATE ex rel. SHULL, Bank Com'r.

No. 24041.   Sept 18, 1934.

Bower Broaddus and Julian B. Fite, for plaintiffs in error.

Scott Ferris, M. B. Cope, and Holtzendorff & Holtzendorff, for defendant in error.

BUSBY, J.   This action was commenced in the district court of Oklahoma county on the 10th day of November, 1930, by the state of Oklahoma, on relation of the State Bank Commissioner, as plaintiff, to recover from the defendants the sum of $5,000 alleged to be due the plaintiff by reason of a breach of the conditions of a fidelity bond for that amount, which bond was executed by the defendant Elmer L. Jones, as principal, and the defendant United States Fidelity & Guaranty Company, as surety.

The defendant Elmer L. Jones was in active charge of the Bank of Oolagah, located at Oolagah, Okla., as its cashier, from April of 1921 to June 4, 1930. During the later years of his period of employment the faithful performance of his duties as such cashier was insured by the bond pursuant to the provisions of chapter 157, S. L. 1923. The state of Oklahoma was properly designated as the obligee in the bond.

Mr. Jones misappropriated $8,200 belonging to the bank. The existence of the deficit in the funds of the bank created by the misappropriation became known to the State Banking Department in June of 1930. Upon the discovery of the deficit by the State Banking Department, the defaulting cashier tendered his resignation, which was accepted by the board of directors of the bank on June 4, 1930. The board of directors at the same time decided to voluntarily liquidate the affairs of the bank.

In November following, this action was commenced in the name of the state by the Bank Commissioner to recover on the fidelity bond. The state of Oklahoma was the nominal plaintiff. The action was instituted for the use and benefit of the Bank of Oolagah as a banking corporation on the theory that that corporation was entitled to recover on the bond the amount of the loss suffered by it to the extent of the amount of the bond, namely $5,000.

The defendants answered jointly. In addition to a general denial they asserted the affirmative defense of payment, alleging, in substance, that the obligation created by the breach of the conditions of the bond had been paid with money borrowed for that purpose by **"friends of the defendant Jones."**

The allegations of the defendants' answer were traversed by the reply of the plaintiff in the form of a general denial.

The trial of the case to a jury in the court below resulted in a verdict in favor of the plaintiff for the amount sought to be recovered. The defendants bring the case to this court on appeal, appearing before us as plaintiffs in error. For convenience we shall refer to the parties as they appeared in the court below.

It is an undisputed fact, disclosed by the record, that on the day the resignation of the defaulting cashier was accepted the depleted funds of the Bank of Oolagah were replenished by a sum of money equivalent to the existing deficit. This money was provided by F. E. Carlstrom and C. A. Schmoy, who, though not named in the answer of the defendants, were the persons therein described as the **"friends of the defendant Jones."** It was the theory of the plaintiff on the trial of this case that these funds were tendered to and received by the bank of Oolagah as a gift or voluntary contribution from Messrs. Schmoy and Carlstrom, and that they were not intended to satisfy the contractual obligation of Jones and his surety to pay $5,000 to the bank.

The philanthropic motives of the two gentlemen are not at all free from doubt. They were forcefully challenged in the trial of this case by the defendants, who urged that the money had been advanced to the bank for the benefit of Jones and with the intention of satisfying his debt to the bank. They introduced evidence tending to show that Jones and his wife delivered their joint promissory note to Schmoy and Carlstrom for the amount of money involved, and that such note was accepted, thereby endeavoring to establish that Carlstrom and Schmoy were in effect making a loan, relying for repayment solely upon the personal credit of Jones and his wife. The testimony of the plaintiff tends to establish that this note was not accepted, and it is an uncontroverted fact that it was returned to the defendant Jones. The defendants also established that Carlstrom and Schmoy had been previously (in January, 1930) informed by Jones of the existence of a deficit in the funds of the bank. The evidence does not clearly indicate that the cause of the deficit was then made known to them. However, it appears that they joined with Jones in January of 1930 in executing a promissory note for $4,000 which was delivered to the Bank of Commerce of Claremore, and in return for which the Bank of Oolagah was credited as a depositor of the Claremore bank with the sum of $4,000, which deposit, although not subject to check, was carried as an asset of the Oolagah bank. The deposit and note were canceled out one against the other at the time the $8,200 was delivered to the Oolagah bank. It was also established that some time between January and June of 1930 Jones deeded to Carlstrom a 120-acre farm of doubtful value, on which there was an unpaid $2,000 mortgage as well as delinquent taxes. In explanation of this transaction testimony appears in the record to the effect that Jones gave the property to Carlstrom, because he, Jones, was going to lose it. The record also reveals that a house in the town of Oolagah owned by Jones was first mortgaged and

later deeded to Schmoy. This transaction is also asserted to have been a gift.

The probative value of the foregoing evidentiary facts need not be discussed in detail. In spite of the explanations offered, they tended to support the defendants' theory that the money paid to the bank in June by Carlstrom and Schmoy was paid as the result of an agreement between Jones and Carlstrom and Schmoy, and was intended to satisfy the obligation of Jones to the bank. However, we are unable to say, after a careful examination of the record, that the disputed fact, namely, that the money delivered by Carlstrom and Schmoy was intended as a gift or voluntary contribution, upon which the theory of the plaintiff depends, is not reasonably supported by the evidence. It was stated in the testimony of Mr. J. D. Pennington, Assistant Bank Commissioner, who actively participated in the transaction, that:

"Was that amount (referring to the $8,200 delivered by Carlstrom and Schmoy on June 4, 1930) placed in the Bank of Oolagah to pay any shortage of defendant's that Elmer Jones owed the bank? A. No, sir." (R-58.)

Having surveyed the evidence bearing upon the disputed question before the court below, we pass to a brief recognition of the principles of law applicable thereto.

Payment has been defined as the performance of the consideration clause of a contract. It implies the existence of a debt from one who is obligated to pay to one who is entitled to receive. Eastern Oil Co. v. Smith, 80 Okla. 207, 195 P. 773, 21 R. C. L. 7. It means the satisfaction of a debt by money or the representative of money. Continental Gin Co. v. Arnold, 52 Okla. 569, 153 P. 160.

Payment may be made by a third party and have the effect of discharging the obligation as though made by the debtor himself. 21 R. C. L. 31. Payment, being a transfer of money or property in performance of an obligation, is distinguished from a gift, which is a voluntary and gratuitous transfer of property from one person to another. Assuming, as in this case, the existence of a debt which might be paid, and the transfer of money which might be in payment thereof, the question of whether the transfer constitutes payment depends upon the intention of the parties. 21 R. C. L. 7. See, also, 48 C. J. 587.

The question of intention, being disputed in this case, was one of fact to be determined by the jury from the evidence under appropriate instruction by the court. As we have already seen, the verdict of the jury on this issue of fact is reasonably supported by evidence and cannot properly be disturbed by this court unless the issue was submitted under improper instructions. This brings us to a consideration of the trial court's instructions to the jury.

Examination of the instructions discloses that the trial court submitted the case to the jury on the theory that the only disputed question of fact was whether the transfer of money from Schmoy and Carlstrom to the Bank of Oolagah was intended as a voluntary contribution or as a payment of the debt of Jones to the bank in reliance upon the credit of Jones. The jury was advised, in substance, that in the event it found in accordance with the first-named contingency, the verdict should be for the plaintiff; otherwise, it should be for the defendant.

Exceptions were taken by the defendants to the instructions of the trial court. In presenting the matter to this court defendants do not complain of the accuracy of the language used by the trial court in explaining the issue to the jury. They do, however, assert that the instructions were insufficient, and therefore defective, because they "ignored the defendant's plea of want of authority of plaintiffs to maintain this action; and, further, the jury under the instructions * * * must, of necessity, find facts that fixed the ownership of the claim in Carlstrom and Schmoy and not the plaintiff or the Bank of Oolagah; and hence the instructions and verdict constitute error."

An understanding of the above-quoted proposition requires a recognition of certain facts appearing in the record, but not previously mentioned in the opinion, and a brief analysis of a theory urged throughout the brief of the defendant.

It appears from the record that Messrs. Carlstrom and Schmoy, who delivered the $8,200 to the Oolagah bank, were directors as well as stockholders in that bank.

The defendants urge that the money was delivered to the bank by these men because of this relationship and the responsibility created thereby; that, as far as the bank was concerned, its demand against Jones and the defendant surety company was thereby satisfied and paid and the equitable doctrine of subrogation operated to trans-

fer the beneficial interest in the contract (fidelity bond) to Schmoy and Carlstrom.

In considering this theory it must be born in mind that a stockholder or director of a bank is not necessarily, by reason of his relationship, prevented from making a gift or voluntary contribution to the banking corporation, since obviously one can give his money to whom he pleases. Thus the relationship of stockholder or director is not in itself necessarily inconsistent with the theory of voluntary contribution advanced by the plaintiff in the trial of this cause. However, the directors and stockholders of a banking corporation are charged with a measure of responsibility, legal and moral, which may entitle them to invoke the equitable doctrine of subrogation in the event they are compelled, by reason of their relationship to the bank, to pay debts due and owing to the bank which should have been paid by others. As applied to this case, if Carlstrom and Schmoy were compelled, by reason of their relationship to the bank, to pay the amount due on the debt of Jones and his surety to the bank in satisfaction thereof, the bank would have no further interest in the controversy, having been paid, and the debt in equity would be treated as having been assigned to Carlstrom and Schmoy. Cope v. Johnson, 123 Okla. 43, 251 P. 985; Royce v. Bank, 21 Okla. 484, 96 P. 640. See, also, 60 C. J. 749, 807.

The theory advanced offers a plausible explanation of the conduct of the parties. It was not covered by the instructions. The defendant says in explanation of this omission in the instructions that the theory is advanced for the first time in this court. That it was not presented in the trial court. If this assertion be true, it is improper to reverse the case for failure to instruct on this particular theory, since it is a fundamental principle governing review by appellate courts that, when a case has been submitted to the trial court upon a particular theory and an appeal is prosecuted from the judgment rendered, neither party will be permitted to change the theory of his case and present it in the appellate court on a different theory than that upon which it was presented in the trial court. Security National Bank v. Cain, 126 Okla. 202, 259 P. 572; Milliken v. Smith, 120 Okla. 211, 251 P. 84; Smith v. Gooding, 100 Okla. 230, 229 P. 269. In order to determine the theory upon which the case was tried in the lower court, the appellate tribunal may look to the entire record (2 R. C. L. page 82), and consider among other things the failure of the complaining party to request instructions on the theory urged in the appellate court. Midland Valley Ry. Co. v. Charter, 115 Okla. 51, 241 P. 749. With this purpose in view we have made a careful examination of the record.

Pleading the defense of payment by a third party may be assumed to be sufficiently comprehensive in its scope to warrant proof of payment under circumstances which would entitle the third party to the benefits of the equitable doctrine of subrogation, and it may be further assumed that the defendant in pleading such payment need not set up the facts which would entitle the third party to invoke the doctrine of subrogation, since the gist of the defense is the satisfaction of the debt due the plaintiff and not the existence of a cause of action in favor of a third party. However, it is important to note in determining the theory of the defendants that their answer describes the third parties who are alleged to have paid the debt as "friends of the defendant Jones," and does not mention their connection with the Bank of Oolagah. Examination of the testimony, and in particular of the cross-examination of the witnesses Schmoy and Carlstrom, fails to reveal a pursuit of pertinent inquiry by counsel for the defendant which would be expected if the theory now advanced were being urged in the trial court. Last, and most important of all, the record reveals that no request whatever was made for an instruction embodying or recognizing the particular theory which the defendants now so urgently advance. Where a trial court has given instructions applicable to the issues and evidence, the judgment will not be reversed for failure to instruct upon a particular phase of issue unless request is made at the trial for such instruction. Muskogee Electric Traction Co. v. Baton, 49 Okla. 344, 152 P. 1109; Drum Standish Commission Co. v. First National Bank & Trust Co. of Oklahoma City, 168 Okla. 400, 31 P. (2d) 843. We therefore conclude from that, the theory now urged was not advanced in the trial court and is therefore not a proper subject of consideration in this court.

The reason of the defendants for relying in the trial court upon the theory that Carlstrom and Schmoy paid the debt of Jones to the bank in reliance upon his credit is obvious. The defendants were seeking to avoid all responsibility on the fidelity bond and to adopt a theory which would entirely release the obligation created by that instrument. Being unsuccessful in that ef-

fort in the trial court, they now advance a theory which would defeat recovery by the bank on the theory that the debt created by the bond was assigned in equity by subrogation to Carlstrom and Schmoy, who must maintain the suit.

It is not urged under the theory advanced that the state of Oklahoma ex rel. Bank Commissioner was not the proper nominal party plaintiff if a cause of action existed in favor of the Bank of Oolagah as a state banking corporation.

As an additional alleged reason for reversing the case, the defendants say:

"As a condition precedent to the maintenance of the action, the bond required notice to be given of any knowledge that might be made the basis of a claim within forty-five (45) days after discovery; and proof of claim mailed to defendant surety within six months. Five months elapsed between the discovery of the loss and the giving of the notice of loss and over six months elapsed before mailing the proof of claim. For failure to comply with the conditions of the bond, the action cannot be maintained."

This is another theory of defense that was not advanced in the trial court. It was not within the issues tendered by the pleadings. No mention of the facts upon which the alleged defense is based is contained in the answer. In the case of U. S. F. & G. Co. v. State ex rel., 157 Okla. 27, 10 P. (2d) 454, this court said:

"In the case of Continental Gin Co. v. Arnold, 52 Okla. 569, 153 P. 160, this court passed upon the question under consideration and held:

" 'The general rule of pleading is that defenses which assume or admit the original cause of action alleged, but are based upon subsequent facts or transactions which go to qualify or defeat it, must be pleaded.'

"In the case at bar, defendant seeks to defeat plaintiff's cause of action because of certain clauses and conditions in the bond sued upon. Under the holding of the court just announced, supra, if defendant desired to take advantage of said defense, it was its duty to plead the same, and if it did not plead said defense, it is held to have waived the same."

For the reasons stated, the asserted ground of reversal is unsound. We have treated the principal questions raised in the brief. The other arguments advanced and assertions made in the briefs are without merit. The judgment of the trial court is affirmed.

RILEY, C. J., CULLISON, V. C. J., and McNEILL and OSBORN, JJ., concur.